Rockingham, }
June 27, 1935. }

MARY J. HEATON *v.* JOHN H. BARTLETT & *a.*

GENEVIEVE J. WALKER *v.* SAME.

358

*Marvin, Peyser, Tucker & Marvin* (*Mr. Robert Marvin* orally), for the plaintiffs.

*John L. Mitchell* (by brief and orally), for the defendants.

*Loring, Coolidge, Noble & Boyd,* (of Massachusetts) (*Mr. Calvin P. Bartlett* orally), for the New Hampshire Society for the Prevention of Cruelty to Animals.

BRANCH, J.   The administration of the trusts here involved cannot be approved.   The beneficiaries have not been paid the income to which they were entitled.   Such payments as they have received have not been made regularly when due, but only after demands of counsel.   The command of the will that the trustees "set apart" the different trust funds thereby created has not been obeyed.   No effort has been made to force a sale of the real estate, the proceeds of which were, by the terms of the will, to be added to the trust funds. Immediate steps to place them upon a legal basis in accordance with the terms of the will and of this opinion are required.

1. The first question reserved for our decision reads as follows: "Should this [superior] Court, upon the facts found, direct the defendants to take any action to compel the sale of the real estate?" This question must be answered in the affirmative.

Annie F. Jenness died August 6, 1930, without expending any portion of the principal of the estate.   With reference to the sale of the real estate, the following facts have been found: "I further find that since the death of Annie F. Jenness, the defendants have taken no action to compel the surviving executor to sell the testatrix's one half interest in the dwelling house known as No. 31 Middle Street and that the same has not been sold by him.   I find that since August 6, 1930, the Portsmouth real estate market was such that this property could not have been disposed of at any fair value.   The surviving executor used due diligence in attempting to sell said property and the defendants were not negligent in failing to take action to compel the sale of the same."

These findings are not decisive of the above question. The assumption that an executor charged with the sale of real property for the benefit of trust estates may properly delay action until he can realize a price which, under different conditions, would be considered a "fair value" for it, is unsound. It is well understood that the settlement of estates frequently necessitates the sale of property under unfavorable market conditions. A fair price under conditions existing at the time of the sale is all that the beneficial owners are entitled to receive.

It is said that a sale in accordance with the will has been difficult to make because the estate of the testatrix consisted only of an undivided half interest in the house in question. It does not appear, however, that any attempt has been made to induce the other owners to join in such a sale and thus enable a purchaser to obtain full title to the property. It was admitted at the argument by counsel for the trustees that partition proceedings had never been commenced and that the interest of the testatrix had never been advertised for sale at public auction. If the executor is not authorized by the statute (P. L., c. 354, s. 1) to maintain partition proceedings, the independent equitable jurisdiction of the court to order partition is adequate for the purpose of adjusting the rights of the interested parties. *Hale* v. *Jaques*, 69 N. H. 411; *Whitten* v. *Whitten*, 36 N. H. 326. Under these circumstances, the claim that since August 6, 1930, it has been impossible to sell the realty of the testatrix cannot be accepted.

The duty of the trustees demands that they get into their hands the full amount of the trust funds provided by the will. They should insist upon an immediate sale of the real estate upon the best terms obtainable under existing market conditions. Since one of the trustees is also the surviving executor, charged by the will with the duty of selling the real estate, no practical difficulty in carrying out this direction should be encountered.

2. The second question transferred is as follows: "Should this [superior] Court direct the defendants to physically separate and set apart or sell sufficient securities to amount, at present market prices, to the amount of each trust created for the plaintiffs?" This question must also be answered in the affirmative.

The language of the will upon this point is clear and specific. The trustees are directed to "set apart" and keep safely invested, the sums devoted to the various trusts therein created. The law would cast upon them this duty if the will did not, in terms, do so. *Thyng* v.

*Moses*, 65 N. H. 106; Am. Law Inst., Restatement of Trusts, *s.* 174. This duty they have not adequately or properly performed.

It is plain from the findings of the court that prior to March 1, 1933, no complete setting apart or allocation of securities to the different trust funds had been made by the defendants. Up to that time the accuracy of the following statements quoted from the plaintiff's brief could not have been questioned: "At no time since the death of the testatrix has there been a definite, specific corpus of either of the trusts created for these plaintiffs. At no time in that period has there been the possibility of these trustees definitely and accurately accounting to these *cestuis que trustent;* nor in the like time has there been the possibility of furnishing to these *cestuis que trustent* a distinct, separate and definitive inventory of the property constituting either trust."

On February 28, 1933, Mr. White of Philadelphia, plaintiff's solicitor, came to Portsmouth, and on that and the following day, conferred with Mr. Mitchell, solicitor for the trustees, and Mr. Walton, one of the defendants. With reference to the events which occurred at that time, the court found the following facts:

"Mr. Mitchell advised him that since the death of Annie F. Jenness there had been no allocation of money or securities by the trustees to the separate accounts of the petitioners. He advised Mr. White that such an allocation was then being prepared for the Probate Court and handed him preliminary statements of what he later filed with the Probate Court. On these statements there were listed stocks, bonds and small amounts of cash, the total value of which as of August 6, 1930, amounted to $20,000., in the Mary J. Heaton Estate and to $25,000. in the Genevieve J. Walker Estate."

"Up to the present time none of the stock certificates have been transferred to the names of these defendants as trustees for these petitioners, but in most instances the stock certificates represent a larger number of shares than has been allocated to the petitioners and stand in the name of John J. Pickering and Calvin Page, Trustees under the will of Mary E. Jenness, or John H. Bartlett and William C. Walton, Trustees under the will of Mary E. Jenness."

For purposes of accounting and determining the rights of the plaintiffs, it may be that this allocation of securities would serve as well as physical segregation and the court finds specifically that "the petitioners have not been harmed by such failure to physically segregate." Nevertheless, full compliance with the obligations of trustees and the requirements of orderly management, demand the physical

segregation of the securities allocated to the several funds and the proper registration of stock ownership, and the plaintiffs are entitled to an order requiring these things to be done.

"It is the duty of trustees holding two distinct trust funds to segregate them. They cannot ordinarily be invested together and the net income prorated to the beneficiaries. It is only by keeping them separate that the losses and charges can be allocated properly." *Lannin* v. *Buckley*, 256 Mass. 78, 82.

The plaintiffs contend that the obligations of the trustees could not in any event be discharged by the allocation of the securities to their respective accounts. It is asserted that the provisions of the will can be satisfied only by setting aside the required amounts in cash and thereafter purchasing securities which are legal investments for trustees. This position is not well taken. We think that the provisions of the eighteenth clause of the will above quoted, which authorizes the trustees to hold all securities in which the estate of the testatrix was invested at her decease and to keep the estate so invested so long as it seems best to do so, apply to all trusts created by the will. Hence the obligations of the trustees with reference to the setting up of the several trust funds will be fully discharged by the proper allocation and physical segregation of securities found in the estate and having a value equal to the sums specified in the will.

The allocation of securities made upon March 1, 1933, on the basis of their value in April, 1930, must, however be rejected *in toto*. No justification is found for taking April 6, 1930, as the date with reference to which the value of securities should be computed. The attempted allocation was intended to be complete and final, and being ineffective for that purpose, neither party can insist that it be treated as a payment on account.

Since no allocation was made in 1930 or thereafter until March 1, 1933, it follows that, during all that time, the beneficiaries of the trusts here involved had equitable interests in the whole undivided estate of the testatrix to the extent of the principal sums designated in the will. In fact, the trustees appear to have proceeded upon the assumption that this was so, for it is found that they "have treated all securities as part of a general fund." When called upon to do their duty and segregate the several trust funds, they could satisfy the equitable claims of the plaintiffs only by allocating and physically setting apart to their accounts securities equal in value to the principal sums of the various trusts upon the date of allocation. The

value which the securities in the estate had in times past was then an immaterial consideration, and for this reason the attempted allocation upon the basis of valuation upon April 6, 1930 was nugatory. A new allocation must now be made and for the reasons above stated, the value of securities used for this purpose must be computed as of the date of such allocation.

Physical segregation is important for the purpose of identifying and preserving the securities of the several trust funds, but the substantive rights of the parties will not ordinarily be affected thereby. For the purpose of fixing the rights of the beneficiaries and setting up proper accounts, the date of final allocation, as distinguished from segregation, is to be taken as definitive.

It should also be said that since the primary purpose of these trusts is to provide an income for the beneficiaries, the allocation to them of securities which may have ceased to pay interest or dividends would be improper.

The case of *Dennison* v. *Lilley*, 83 N. H. 422, upon which the defendants strongly rely as justifying the action which they have taken, is not decisive of the question here involved. There the testator made a specific bequest of securities in trust and directed that cash sufficient to create a fund of a designated amount be added to them, and it was held that the value of the securities upon the date when the legatee was entitled to receive them determined the amount of the necessary cash addition. Here there was no specific bequest of securities, but merely a direction to the trustees to set up a trust fund of a definite amount, measured in money. This direction might, under the terms of the will, have been fulfilled by placing the required amount of securities to the credit of each fund, but, as pointed out above, until this was done, the plaintiffs continued to have equitable claims, specific in money value, against the entire estate in the hands of the trustees. Under these circumstances, the case of *Dennison* v. *Lilley*, *supra*, furnishes no authority for the selection of any date in the past as the time upon which the value of securities thus set apart shall be computed.

It was objected by counsel for the society which is the ultimate residuary legatee of the estate, that this procedure would cast upon the society the burden of market depreciation since the date of the life tenant's death, April 6, 1930.

Two comments upon this argument seem pertinent. The first is that if the residuary gift to the society is diminished in amount by reason of the failure of the trustees to attend to their duties, the ques-

tion of their individual liability for losses thus sustained may be raised in the probate court. *Dennison* v. *Lilley, supra.*

The second suggestion is that such a result seems to accord with the purpose of the testatrix. The thirteenth clause of the will above quoted provides that the principal of the residuary estate shall not be paid over to the society "until the whole of said fund above held by my Trustees for the benefit of my said nephew and nieces shall have been paid over to their children, free and discharged from all trust." This language indicates an intent, however vaguely conceived and expressed, that her entire estate should remain as security for the complete execution of the other trusts created by the will until they should be fully liquidated.

Confirmation of the view that the testatrix attached preëminent importance to these trusts is found in the sixteenth clause of the will which provides that in case the estate proves insufficient to pay in full all pecuniary legacies, they shall all be reduced proportionally "excepting that given to keep in repair the tomb and lot and those given for the benefit of my nephew Peter Jenness and my nieces Mary E. and Genevieve Jenness."

3. The third question transferred by the superior court is as follows: "Should this [superior] court direct the defendants to obtain from the executors any further accounting?"

From what has been said with reference to the sale of the decedent's real estate, it is plain that a further accounting from the executors for the proceeds of such sale when made will be required. With regard to the other property of the estate, the court has found that all the estate remaining in the hands of the original executors has been delivered to the present trustees, whose first two accounts have been filed and allowed by the probate court. Under these circumstances, no further accounting as between the executors and the trustees is required with reference to this portion of the estate.

*Case discharged.*

All concurred.