LILLIAN PASTAN & others,[1] executors, *vs.* LILLIAN PASTAN & others.[2]

Norfolk. April 2, 1979. — May 21, 1979.

Present: HENNESSEY, C.J., QUIRICO, KAPLAN, WILKINS, & LIACOS, JJ.

*Trust*, Taxation, Marital deduction trust, Trustee's discretion. *Devise and Legacy*, Marital deduction trust.

Where the provisions of a will, taken as a whole, indicated the testator's clear intent that a testamentary trust be funded in an amount equal to the maximum marital deduction allowable under Federal estate tax law, but a specific provision gave the executors the power "to make any division or distribution ... in kind or in money, ... and to that end to allot to any part or share such stock, securities or other property, real or personal, as to them seems proper in their absolute judgment, and their judgment as to the value of such stock, securities, or other property so allocated shall be conclusive on all parties," that provision was construed to require the executors to value the assets distributed to the marital deduction trust as at the date of distribution and to assure that the value then passing to that trust was not less than 50% of the adjusted gross estate for Federal estate tax purposes. [153-157]

CIVIL ACTION commenced in the Probate Court for the county of Norfolk on February 8, 1977.

---

[1] Harvey Pastan and Julius Stone.

[2] Robert S. Pastan, Patricia Manuel, Arlyne Norman, Sanford Pastan, and Harvey Pastan (beneficiaries).

The case was reported to the Appeals Court by *Ford*, J. The Supreme Judicial Court granted a request for direct review.

*Steven J. Goldberg* (*Richard J. Litner* with him) for the plaintiffs.

KAPLAN, J. The will of William Pastan was admitted to probate in Norfolk County on May 21, 1973, and in December of that year the plaintiff executors filed a Federal estate tax return claiming a marital deduction[3] of $82,193; giving effect to the deduction, they paid an estate tax of $1,683. The Internal Revenue Service (I.R.S.), basing itself on a certain interpretation of the provisions of the will regarding the executors' powers in funding the marital deduction trust — an interpretation disputed by the executors — disallowed $73,874 of the claimed deduction,[4] and assessed an additional tax which, with interest and penalty, came to $19,663.44. This was paid in January, 1976. The executors retain their cause of action for refund.

In February, 1977, the executors commenced the present action in the Probate Court for Norfolk County, joining all beneficiaries, and praying a construction of the pertinent clauses of the will according to the law of the Commonwealth which might bind the I.R.S. under the doctrine of *Commissioner* v. *Estate of Bosch*, 387 U.S. 456 (1967). As usual in such cases, the I.R.S., although notified of the action, chose not to participate in it.[5] After hearing, the judge accepted as "evidence" the complaint and a statement of agreed facts, and on that basis reported seven questions of law to the Appeals Court which pose, with

---

[3] I.R.C. § 2056.

[4] The difference of $8,319 is accounted for by an insurance recovery and property jointly held by husband and wife as to which no question of unascertainability of amount (see below) could arise.

[5] For the discussion in this court as to whether we should lend ourselves to litigation not exhibiting the usual adversary characteristics, see *Babson* v. *Babson*, 374 Mass. 96, 101-103, 106-108 (1977) (Quirico, J., dissenting).

considerable repetition, the interpretive question under-
lying the tax liability. We granted direct appellate review
on application of the executors.

The evidence consists essentially of the will. The dece-
dent directed that his estate (minus funeral and other
charges) be divided into two shares. By recognizable "for-
mula" provisions,[6] share No. 1 was to be set up as a mari-
tal deduction trust for the benefit of the wife Lillian.
Under paragraph III C (text in appendix 1 below), this
share was to "be equal in amount to fifty per cent of my
adjusted gross estate for federal estate tax purposes" (the
maximum amount then permitted for the deduction).[7]
Paragraph IV A directed that income from the share
should be paid to Lillian monthly during her life, with
power in the trustees to distribute to her any part of the
principal, and with a power in her to appoint by will any
principal or unpaid income remaining at the time of her
death. In form, Lillian's interest, taking the provision for
her lifetime together with her testamentary power,
would qualify for the marital deduction as "nontermina-
ble."[8]

Share No. 2, consisting of the rest of the testator's es-
tate, after deduction of a cash legacy for his son Robert,
was to form a trust with income for life to Lillian and
discretion in the trustees during that period to distribute

---

[6] See generally R. B. Covey, The Marital Deduction and the Use of
Formula Provisions (2d ed. 1978).

[7] The words following those quoted in the text cover such items as
the fund and property mentioned in n.4 above.

Before the Tax Reform Act of 1976 the deduction was limited to
one-half of the "adjusted gross estate"; the 1976 act substituted the
greater of half the adjusted gross estate or $250,000. See I.R.C.
§ 2056(c)(1)(A).

[8] See I.R.C. § 2056(b)(5). The confinement of the marital deduction
to nonterminable interests is explained by the origins of the deduction
in the attempt to secure parity in taxation between estates in com-
munity-property States and in other States. See Surrey, Federal Taxa-
tion of the Family — the Revenue Act of 1948, 61 Harv. L. Rev. 1097,
1127-1128 (1948).

any part of the principal to her or to the children of the marriage or grandchildren; on her death the principal was to go in equal shares to the children or their issue. As Lillian had no power of appointment, her interest in this trust would be regarded as "terminable" and therefore ineligible for a marital deduction even if that were not exhausted by the share No. 1 trust.

From paragraph III C setting up the share No. 1 trust, a purpose appears to make full use of the marital deduction; and other indications of the same design are found in the will such as the provision in paragraph VII that "all estate, inheritance, transfer, legacy or succession taxes" should be paid out of share No. 2 without apportionment. Cf. *Boston Safe Deposit & Trust Co.* v. *Children's Hosp.*, 370 Mass. 719 (1976). The I.R.S. held, however, that the plan to maximize the marital deduction failed and the deduction was in substance lost because, according to the I.R.S. interpretation, a terminable feature remained. This was said to derive from paragraph VIII J (appendix 2) where are set forth the powers of the executors in making distributions, including the distribution by which they were to fund the share No. 1 trust.

To frame the problem, we have to refer to Revenue Procedure 64-19 (1964-1 C.B. 682). This states "the position of the Internal Revenue Service relative to allowance of the marital deduction in cases where there is some uncertainty as to the ultimate distribution to be made in payment of a pecuniary bequest or transfer in trust where the governing instrument provides that the executor or trustee may satisfy bequests in kind with assets at their value as finally determined for Federal estate tax purposes." *Id.* at § 1. Suppose the amount of such a trust is fixed in the will as equal in amount to a percentage of the adjusted gross estate as that figure shall be established for Federal estate tax purposes. Now suppose the assets of the estate which the fiduciary proposes to distribute in kind to the trust, when the trust is set up, were of the aggregate requisite value at the time of estate tax

valuation, but have declined in market worth by the time of the distribution. If, by a possible interpretation of the terms of the will, it appears that the fiduciary may fund the trust with those assets, and no more, the allowance of a marital deduction is called into serious question. In such a case, the interest of the surviving spouse can be seen as terminable because the action of the fiduciary appears to divert or "appoint away" a portion of the marital deduction trust and make another disposition of it.[9] Moreover the eventual or total tax consequences of allowing the marital deduction trust to be funded with depreciated assets would not be in keeping with the policy of the deduction.[10] Under Revenue Procedure 64-19, the I.R.S. insists on one or the other of two alternative assurances if the marital deduction is to be preserved: "Where, by virtue of the duties imposed on the fiduciary either by applicable state law or by the express or implied provisions of the instrument, it is clear that the fiduciary, in

---

[9] "An argument could be made that the fiduciary has a power of appointment over the marital bequest which has the effect of making the value of the property disposed of by the legacy provision unascertainable in amount and disqualifying such property for the marital deduction." Covey, *supra* at 100-101. See Rogovin, The Sound and the Fury, Official Views on Revenue Procedure 64-19, 104 Trs. & Est. 432, 434 (1965).

[10] The estate might thereby escape tax on the amount of an appreciation of assets between the estate tax and distribution date values. It is said also that, receiving depreciated assets, the marital trust might sell at prices up to estate tax values without paying tax on that appreciation. If the assets continued depreciated in the marital fund to the death of the surviving spouse, the tax in the estate of that spouse would be on the depreciated figure. Appreciated assets that were kept out of the marital fund and distributed to the nonmarital fund would not be subject to the estate tax in the surviving spouse's estate on that spouse's death. Nor would that spouse be likely to suffer from such distribution where (as is often the case, and was the case here) the surviving spouse has a life estate in the nonmarital fund. See Covey, *supra* at 100; Hoffman, in Practice Commentary on N.Y. Estates, Powers and Trusts Law § 2-1.9, at 174 ff. (McKinney 1967); C. L. B. Lowndes, R. Kramer, & J. H. McCord, Federal Estate and Gift Taxes 488-490 (3d ed. 1974).

order to implement such a bequest or transfer, must distribute assets, including cash, having an aggregate fair market value at the date, or dates, of distribution amounting to no less than the amount of the pecuniary bequest or transfer, as finally determined for Federal estate tax purposes, the marital deduction may be allowed in the full amount of the pecuniary bequest or transfer in trust. [This is the so called 'minimum value' approach.] Alternatively, where, by virtue of such duties, it is clear that the fiduciary must distribute assets, including cash, fairly representative of appreciation or depreciation in the value of all property thus available for distribution in satisfaction of such pecuniary bequest or transfer, the marital deduction is equally determinable and may be allowed in the full amount of the pecuniary bequest or transfer in trust passing to the surviving spouse. [The 'ratable sharing' approach.]" *Id.* at § 2.02. (It is a significant feature of Revenue Procedure 64-19 that if the fiduciary should be found empowered to go down either alternative road at his election, the deduction would be in jeopardy because, again, the interest could be considered terminable. *Id.* at § 2.03.)[11]

Referring now to the present will, there is no language which expressly conforms to either of the alternatives mentioned in Revenue Procedure 64-19, and the I.R.S. could indeed point to language in paragraph VIII J inviting a "terminable" interpretation. Thus, with ellipses, we read — "In the administration . . . of the Trusts established under this Will, the Executors . . . shall have the following powers: J. . . . to make any division or distribution required under the terms of this will in kind or in money,. . . and to that end to allot to any part or share such stock, securities or other property, real or personal, as to them seems proper in their absolute judgment, and

---

[11] See also Rogovin, *supra.* Mississippi discovered this pitfall the hard way when it enacted a statute permitting a choice between the § 2.02 alternatives. See Covey, *supra* at 104-112.

their judgment as to the value of such stock, securities, or other property so allocated shall be conclusive on all parties;. . ."[12] This language, it could be argued, comprehends a power to distribute assets to the share No. 1 trust, upon its founding, at their value established for estate tax purposes, despite a decline in value by the date of the distribution.

But two principles of interpretation or of trust administration impinge on the language: First, in allocating assets in kind, a fiduciary as a general rule is to take them at their values as at the time of distribution and ordinarily at their then market values. See *Boston Safe Deposit & Trust Co.* v. *Stone*, 348 Mass. 345, 350 (1965); Restatement (Second) of Trusts § 347, Comment h (1959); 4 A. Scott, Trusts §§ 347, 347.6-347.7 (3d ed. 1967). Second, despite wording in a dispositive instrument which seemingly empowers the fiduciary to be fanciful or arbitrary in making valuations, he is held by the law to the exercise of an honest, objective judgment, which in practice will mean a reasonable judgment corresponding to reality, and in the case of traded-in properties will doubtless mean a judgment in terms of market values. See *Boston Safe Deposit & Trust Co.* v. *Stone, supra* at 350-353; 4 A. Scott, *supra,* § 347.4, at 2759; Restatement, *supra. Cf. Old Colony Trust Co.* v. *Silliman*, 352 Mass. 6, 9-10 (1967).

Any doubt on these matters is cancelled by some pointed language of paragraphs III C and VIII J still to be quoted. The former paragraph ends with the words, "In no event shall any property or interest be allocated to this bequest of the residue of my estate which is a 'terminable interest' (as provided in § 2056(5) [now § 2056 (b) (1)] of the Internal Revenue Code or any successor Statute)." The latter paragraph states, "J. Subject to the limitation contained in Paragraph III C. with respect to the assets to be

[12] The subsequent language of paragraph VIII J about the trustees not being required to make provision for diminution or increase, and so forth, seems referable to the period after the trusts are set up.

allocated to Share #1, to make any division or distribu-
tion," etc. Although these quoted clauses are not artful,
they do bespeak an intent to avoid any interpretation
that would jeopardize the marital deduction. Hence we
are reinforced in the conclusion that the executors here
were bound to value the assets passing to the share No.
1 trust at fair market value as at the time of distribution.
The proposition that interpretation of the dispositive in-
strument may be influenced or weighted by a considera-
tion of the testator's tax intentions[13] has been developed
in our series of cases beginning with *Mazzola* v. *Myers*,
363 Mass. 625 (1973), and continuing through *First Nat'l
Bank* v. *First Nat'l Bank*, 375 Mass. 121 (1978).[14] The
thought is expressed in *Putnam* v. *Putnam*, 366 Mass.
261, 271 (1974), as follows: "It would be a rare case in
which a conflict of terms or an ambiguity in a will should
be resolved by attributing to the testator an intention
which as a practical matter is likely to benefit the taxing
authorities and no one else. . . . If [the testator's primary]
intention can be discerned from the will, using normal
principles of construction, it should not be thwarted by
placing legalistic overreliance on an omission of counsel
in dealing with a subject of such complexity."

There remains the question whether, in respect to the
allocation of assets to share No. 1, the will indicates an
election of either the "minimum value" or "ratable shar-
ing" alternative — an election to pass to that share prop-
erties having an aggregate value not less than the
amount specified in paragraph III C (an amount equal to
50% of the adjusted gross estate for Federal estate tax

[13] One is reminded of the maxim that "the thing should rather
achieve its effect than be destroyed" (ut res magis valeat quam pereat).

[14] In addition to *Mazzola, Putnam, and First Nat'l Bank*, see *Babson*
v. *Babson*, 374 Mass. 96, 104-105 (1977); *Boston Safe Deposit & Trust
Co.* v. *Children's Hosp.*, 370 Mass. 719, 724-725 (1976); *State Tax
Comm'n* v. *Loring*, 350 Mass. 568, 571 (1966); *New England Trust Co.*
v. *Faxon*, 343 Mass. 273, 281 (1961). Cf. *Persky* v. *Hutner*, 369 Mass. 7,
15 (1975).

purposes), or to pass to that share properties with a value fairly representative of appreciation or depreciation of all assets available for distribution thereto. We think the statement of the amount of the trust appearing in paragraph III C is itself an election of the first alternative. Choice of the second would tend to convert what to all appearances was a pecuniary bequest into a bequest of a fractional share.[15] Were there no indication in the instrument of any difference of character or purpose as between shares Nos. 1 and 2, a rule of equity would suggest that

[15] The conclusion is assisted by the fact that Lillian is a beneficiary of both trusts (the executors being Lillian, an outsider, and a remainderman of the share No. 2 trust); ratable sharing might have somewhat greater appeal if there were not such an identity.

A number of States (not including Massachusetts) have adopted statutes which limit the discretion of the fiduciary in choosing assets to satisfy a pecuniary bequest, so that Revenue Procedure 64-19 may be complied with in cases where the instrument leaves a doubt. California and New York are among the States that have opted for the minimum value rather than the ratable sharing approach (Cal. Prob. Code § 1029, Civ. Code § 2264 [Deering Supp. 1979]; N.Y. Est., Powers & Trusts Laws § 2-1.9 [McKinney 1967]), and the commentators have said that this was "more nearly consistent with the intent underlying a pecuniary disposition" (Wyshak & Wyshak, Legislative Relief for Maximum Marital Deductions and 64-19, 41 J. State Bar of Cal. 711, 712 [1966]), or "more in keeping with the testator's probable objectives" (Rohan, Supplementary Practice Commentary on § 2-1.9, 41 [McKinney, Supp. 1978-1979]). See Comment, Marital Deduction Pecuniary Formula Bequests: Revenue Procedure 64-19 and N.Y. Personal Property Law § 17-f, 30 Alb. L. Rev. 262, 270 (1966): one reason for New York's choice was dissatisfaction with judicial predilection for "continually strain[ing] the language of wills to convert what looked like a pecuniary bequest into a fractional share." See also Polasky, Marital Deduction Formula Clauses in Estate Planning—Estate and Income Tax Considerations, 63 Mich. L. Rev. 809, 885 (1965). Some States, however, have preferred the ratable sharing approach. Covey, supra at 104-112, collects State laws. (Note that as California is a community-property State, its statutes above cited apply only to noncommunity property going to a surviving spouse.)

The Tax Court in Estate of Hamelsky, 58 T.C. 741 (1972), read New Jersey common law to require ratable sharing, thus saving a marital trust, under a will explicitly directing that estate tax values control distribution. See also Hurst v. First Ky. Trust Co., 560 S.W.2d 819 (Ky. 1978).

both trusts should suffer and enjoy on an even basis market depreciations and appreciations (see *Old Colony Trust Co.* v. *Silliman, supra* at 10; *Boston Safe Deposit & Trust Co.* v. *Stone, supra* at 350), but that rule bends to contrary intention (see *New England Merchants Nat'l Bank* v. *Koufman,* 363 Mass. 454, 460-461 [1973]; *Fitts* v. *Powell,* 307 Mass. 449, 454 [1940]; *Heaton* v. *Bartlett,* 87 N.H. 357, 365 [1935]). This intention we find expressed in the very terms of the marital deduction bequest.

We answer the questions reported in the sense that the executors were required to value the assets distributed to the share No. 1 trust as at the date of distribution, and to assure that the value then passing to that trust was not less than 50% of the adjusted gross estate for Federal estate tax purposes.

*So ordered.*

## APPENDIX 1

"III. . . . C.  Share # 1 shall be equal in amount to fifty per cent of my adjusted gross estate for federal estate tax purposes diminished, however, by the federal estate tax value of any property or interest in property passing to my said wife LILLIAN under this Will or otherwise, includible in my gross estate for federal estate tax purposes and qualifying for the marital deduction under said federal estate tax.  In no event shall any property or interest be allocated to this bequest of the residue of my estate which is a 'terminable interest' (as provided in Section 2056(5) of the Internal Revenue Code or any successor Statute)."

## APPENDIX 2

"VIII.  In the administration of my estate and of the Trusts established under this Will, the Executors and Trustees shall have the following powers:

. . . .

"J.  Subject to the limitation contained in Paragraph III C. with respect to the assets to be allocated to Share # 1, to make any division or distribution required under the terms of this will in kind or in money, or partly in kind and partly in money, and to that end to allot to any part or share such stock, securities or other property, real or

personal, as to them seems proper in their absolute judgment, and their judgment as to the value of such stock, securities, or other property so allotted shall be conclusive on all parties; provided, however, that the Trustees shall not be required to make physical division of the funds except when necessary for distribution of principal, but may, in their discretion, keep the Trusts in one or more consolidated funds; nor shall the Trustees be required to make any provision on account of the diminution or increase in value of any securities or investments at any time constituting a part of my estate or of the Trusts hereby established, or for depreciation in respect of any tangible property, or for the purpose of amortizing or making good any amounts paid in premiums on the purchase of securities or of any other property."