MERRILL C. BERMAN & others, trustees, *vs.*
ALLAN I. SANDLER & others.

Middlesex. November 7, 1979. — January 10, 1980.

Present: HENNESSEY, C.J., QUIRICO, KAPLAN, WILKINS, & ABRAMS, JJ.

*Devise and Legacy,* Taxes, Marital deduction trust. *Trust,* Taxation, Marital deduction trust, Reformation. *Jurisdiction,* State law affecting Federal tax.

Where the settlor of a trust executed an amendment with the sole intention of conforming the trust provisions to the requirements of the Federal estate tax marital deduction, but contrary to her intention and through an inadvertent mistake of the scrivener the amendment eliminated the operative provisions of the marital deduction trust, the trust amendment was reformed to reflect the settlor's intent. [508-511]

CIVIL ACTION commenced in the Middlesex Division of the Probate and Family Court Department on December 12, 1978.

The case was reported by *McGovern, J.*, to the Appeals Court. The Supreme Judicial Court granted a request for direct review.

*Nicholas U. Sommerfeld* for the plaintiffs.

*Philip H. Suter,* guardian ad litem, pro se.

HENNESSEY, C.J.   This is an action to reform a written trust agreement brought by the trustees of a trust created by the late Ellen B. Sandler.   The defendants, beneficiaries under the trust, are the settlor's husband, named both in his individual capacity and as executor of the settlor's will, and their two minor children.   A guardian ad litem was appointed to represent the interests of the minor children and those persons not yet in being who may become interested in the trust.   Pursuant to Mass. R. Civ. P. 64, 365 Mass. 831 (1974), a judge of the Probate and Family Court Department of the Trial Court reserved and reported the case without decision to the Appeals Court.   All parties thereupon filed a joint application for direct appellate review, which we allowed in accordance with G. L. c. 211A, § 10 (A).

All parties are in agreement as to the facts.   On July 9, 1968, Ellen B. Sandler, as donor, executed an agreement of trust naming Merrill C. Berman and herself as trustees.   The trust, known as the Ellen B. Sandler Trust, was revocable and at the donor's death divided into a marital deduction trust and a non-marital deduction trust, known as Trust A and Trust B respectively.   The marital deduction trust, the only one in question here, was set out in section 1 of article Third of the trust agreement.   It was determined by a fractional share formula and contained the usual provisions necessary not only for its administration but also for its qualification as a marital deduction under I.R.C. § 2056 (b).[1]   The first paragraph of section 1 provided for a smaller marital deduction to equalize the estates of the donor and her husband should the husband not survive his wife by six months.

---

[1] Two key elements of a qualifying marital deduction trust include the right of the surviving spouse to receive all the net income for life and a general testamentary power of appointment in the surviving spouse over the principal of the trust.

On June 29, 1972, an attorney for Mrs. Sandler[2] proposed an amendment to the trust, the purpose of which was to excise from the trust the so called equalization language which the attorney feared might jeopardize qualification for the marital deduction. A paragraph was to be substituted identical to the first paragraph of section 1 of article Third of the original trust agreement except for the substitution of a presumption of the husband's survival in place of the equalization language. However, the scrivener omitted the words "the first paragraph of" from the clause detailing the language to be deleted. Thus, instead of deleting merely the first paragraph of the first section of article Third, the amendment excised the entire first section. In effect, the paragraphs specifying the essential elements of the marital deduction trust were replaced by one paragraph calling for the creation and funding of such a trust. The amendment was signed by Mrs. Sandler on October 1, 1972, and was accepted by the trustees. No one noticed the scrivener's omission until after Mrs. Sandler's death on August 4, 1978.

The trustees, joined by the guardian ad litem,[3] seek reformation of the amendment so that they may proceed with the funding of the trusts[4] and with the filing of necessary tax returns. Although the availability of the marital deduction is "a matter to be decided under Federal tax law," any

---

[2] The attorney who proposed the trust amendment is not involved in the present suit.

[3] We are not faced with a potential conflict between the trustees and the guardian ad litem. The guardian ad litem agrees that the requested reformation is in the best interests of the settlor's minor children and her unborn and unascertained issue, who are the discretionary beneficiaries of Trust B, the nonmarital deduction trust. Assuming an adjusted gross estate of $1,500,000, Trust B could be reduced by Federal estate taxes of approximately $454,500 if the marital deduction were not available. If the deduction were available, however, Federal estate taxes would reduce Trust B only by approximately $191,000. Consequently, the reformation could save Trust B, the issue's trust, about $263,500.

[4] The original trust was nominally funded with $10. Under the donor's will, dated July 9, 1968, her probate assets other than real estate and tangibles "poured over" into the two trusts.

modification of the trust agreement to conform with the set-
tlor's intent with respect to the marital deduction is "clearly
a matter of State law" which this court may properly de-
cide. See *Babson* v. *Babson,* 374 Mass. 96, 101-102 (1977),
quoting from *Mazzola* v. *Myers,* 363 Mass. 625, 633 (1973).
It is appropriate for us to render a decision in this case de-
spite the parties' agreement that the amendment contained
an inadvertent scrivener's mistake, cf. *Pastan* v. *Pastan,* 378
Mass. 148, 149 (1979); *Babson* v. *Babson, supra* at 101-103
(1977), because only an interpretive decision by the highest
State court will dispose of contrary interpretations by the
Internal Revenue Service.[5] See *Commissioner* v. *Estate of
Bosch,* 387 U.S. 456, 465 (1967). We conclude on the basis
of the discussion below that the amendment should be re-
formed so as to delete only the first paragraph of the first
section of article Third and to retain the remainder of sec-
tion 1 as found in the 1968 trust instrument.

It is settled that a written instrument, including a trust,
will be reformed on grounds of mistake upon "full, clear,
and decisive proof" of the mistake. See *Coolidge* v. *Loring,*
235 Mass. 220, 224 (1920), quoting from *Richardson* v.
*Adams,* 171 Mass. 447, 449 (1898); 4 A. Scott, Trusts § 333.4
(3d ed. 1967); 13 S. Williston, Contracts §§ 1548, 1585 (3d
ed. 1970); Restatement (Second) of Trusts § 333, Comment
e (1959). Cf. *Franz* v. *Franz,* 308 Mass. 262, 265-267
(1941) (deed). The doctrine of reformation for mistake
with regard to trusts differs from that with respect to instru-
ments such as contracts, however, in one important respect.
In contract law, reformation will not be granted unless the

---

[5] We note that there is no indication in the record that the Internal Rev-
enue Service received notification of this action. We express no opinion
on the significance of this omission but observe that the Internal Revenue
Service has usually chosen not to participate in such actions. See *Pastan* v.
*Pastan* 378 Mass. at 149; *Babson* v. *Babson,* 374 Mass. at 102-103.

We assume that if the Appeals Court of this Commonwealth decided a
matter and this court thereafter denied a petition for further appellate
review, the Federal authorities would accept that process as a sufficient
expression of views by the highest State court.

parties' mistake is mutual. *Eno* v. *Prime Mfg. Co.,* 317 Mass. 646, 650 (1945). *Corbett* v. *Craven,* 196 Mass. 319, 321 (1907), appeal dismissed sub nom. *Kenney* v. *Craven,* 215 U.S. 125 (1909). However, mutuality of mistake is not always required where trusts are concerned. Since a settlor usually receives no consideration for the creation of a trust, a unilateral mistake on the part of the settlor is ordinarily sufficient to warrant reformation. 4 A. Scott, Trusts § 333.4 (3d ed. 1967). Restatement (Second) of Trusts § 333, Comment e (1959). Included in the category of unilateral mistakes for which relief may be obtained is a settlor's acceptance of a trust instrument which, because of the mistake or inadvertence of the scrivener, fails to embody the settlor's intentions. Cf. *Sampson* v. *Mudge,* 13 F. 260, 261-262 (D. Mass. 1882); *Franz* v. *Franz, supra* at 266-267; *Coolidge* v. *Loring, supra* at 225; G. Bogert, Trusts and Trustees § 991 (2d ed. 1962); 13 S. Williston, Contracts § 1549A (3d ed. 1970). The additional fact that the settlor in the case at bar has died should not foreclose relief, *Roos* v. *Roos,* 42 Del. Ch. 40, 44-45 (1964), and cases cited therein; W. Kerr, Fraud and Mistake 566 (7th ed. 1952); Restatement (Second) of Trusts § 333 (1959), so long as the evidence of mistake meets the requisite standard of proof.

In light of the foregoing principles, we now examine both the settlor's intent with regard to the trust amendment and the proffered evidence of mistake. To ascertain the settlor's intent, we look to the trust and its amendment as a whole and in particular focus on the circumstances known to the settlor upon execution of the amendment. See *Putnam* v. *Putnam,* 366 Mass. 261, 266-267 (1974). Consideration of the latter extrinsic evidence is proper where, as here, an amendment renders a trust ambiguous. See *id.*

The present amendment, like the original trust, provides for the creation of a separate trust for the settlor's husband to be funded with "that fractional share of the trust property which . . . is needed to obtain the maximum marital deduction allowable in determining the federal estate tax on the donor's estate." This language standing alone demon-

strates that the settlor intended that her estate avail itself of the maximum permissible marital deduction in computing the Federal estate tax. See *id.* at 267. However, the amendment as drafted created doubts about the trust's qualifications for the marital deduction. If read literally, the amendment would replace the operative provisions of the marital deduction trust, without which the deduction would fail to qualify, with one paragraph specifying only the amount to be set aside for such a trust. Such a literal construction would not give effect to the settlor's expressed intent to qualify the trust for the marital deduction. See *State Tax Comm'n* v. *Loring,* 350 Mass. 568, 571 (1966). Also militating against a literal construction of the amendment is the rationale given by Mrs. Sandler's attorney for proposing the amendment, namely that such a change would eradicate any doubts concerning the trust's qualification for the deduction. The overwhelming weight of the evidence, as established by the allegations of the complaint, the admissions in the defendant's answer, the letter of the attorney who drafted the trust amendment, and the face of the amendment itself, clearly and decisively points to a scrivener's error as the source of the mistake. Thus, we conclude that the settlor executed the 1972 trust amendment solely with the intention of conforming the trust provisions to the requirements of the Federal estate tax marital deduction,[6] that she did not intend thereby to eliminate the trust's operative provisions, and that the trust amendment should be reformed to reflect this intent. Accordingly, judgment shall enter in the court below reforming the trust amendment so as to delete only the first paragraph of the first section of article Third and to retain the remainder of section 1 as it appears in the original trust agreement.

*So ordered.*

---

[6] The fact that we are influenced in our interpretation of the amendment by "a consideration of the [settlor's] tax intentions" is in no way improper. See *Pastan* v. *Pastan,* 378 Mass. at 155, and cases cited therein.