S. NANCY SIMCHES, trustee,[1] *vs.* S. NANCY SIMCHES, trustee,[2] & others.[3]

Suffolk. October 8, 1996. - November 6, 1996.

Present: WILKINS, C.J., ABRAMS, O'CONNOR, & FRIED, JJ.

*Trust,* Qualified personal residence trust, Reformation, Settlor, Mistake. *Taxation,* Trust, Generation skipping transfer tax. *Mistake.*

In an action seeking to reform a trust instrument, this court concluded that reformation of the trust, on the ground of mistake, to substitute children for grandchildren as beneficiaries was appropriate so as to accord with the settlor's intentions and, thus, to avoid tax consequences that were neither foreseen nor intended when the trust was created. [686-689]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on June 3, 1996.

The case was reported by *Wilkins,* J.

The case was submitted on a joint brief.

*Deborah S. Kay & Karen M. O'Toole* for S. Nancy Simches.

*Gerald Simches, Lorri S. Owades & Sherri A. Mahne,* pro se.

*Raymond H. Young,* guardian ad litem.

FRIED, J. In this action the settlor and sole trustee of an irrevocable trust instrument seeks to reform the instrument by changing the remaindermen so as to accord with the settlor's intentions and thus avoid tax consequences that were neither foreseen nor intended when the trust was created. The single justice reserved and reported this case without decision to us.

I

In 1992, the plaintiff established a qualified personal resi-

[1]Of the S. Nancy Simches Qualified Personal Residence Trust.

[2]Of the N & R Nominee Trust.

[3]Gerald R. Simches and Lorri S. Owades, trustees of the MacKenzie M. Owades 1990 Trust; Gerald R. Simches and Lorri S. Owades, trustees of the Justin T. Owades 1990 Trust; Gerald R. Simches and Lorri S. Owades, trustees of the Jeremy S. Owades 1992 Trust; Gerald R. Simches and Sherri A. Mahne, trustees of the Thomas C. Mahne 1990 Trust; MacKenzie M. Owades; Justin T. Owades; Jeremy S. Owades; Thomas C. Mahne; and the Commissioner of the Internal Revenue Service.

dence trust (QPR trust) pursuant to § 2702 of the Internal Revenue Code (1994) (I.R.C.), and transferred her Osterville vacation property into that trust. According to the terms of the trust, the plaintiff maintained a right of exclusive use of the property for a ten-year period. If the plaintiff dies in that ten-year period, the property would be distributed to her estate. If she survives the ten-year period, the residence would be distributed to the N&R Nominee Trust (nominee trust). The sole beneficiaries of the nominee trust were four further trusts for the benefit of each of the plaintiff's four grandchildren.

The sole purpose of the QPR trust was to transfer the Osterville property to the plaintiff's issue in such a way as to reduce the resulting tax liability by creating a QPR trust pursuant to § 2702, as amended, while allowing the plaintiff to remain in possession of the residence for the term of the trust. Title 26 C.F.R. § 25.2702-5 (1996) was adopted by the Internal Revenue Service to permit the transfer of family homes with reduced tax liability. Under 26 C.F.R. § 25.2702-5, the residence must be transferred irrevocably to a QPR trust for a fixed term. The settlor is permitted to remain in possession during that term and only at its expiration does the property pass to the beneficiary. At the time the trust is settled, the settlor must pay gift taxes on the value of the transfer to the QPR trust. This means of transferring the property has three principal advantages. The gift tax is paid on the value of the property at the time of the transfer to the trust, thus avoiding tax based on a subsequent higher value if the property appreciates. Second, the value of the transfer for tax purposes is discounted insofar as the intended beneficiaries' receipt of the property is delayed for the term of the trust during which time the settlor retains a possessory interest. Third, the value of the transfer is discounted based on the probability that the settlor will not survive the term of the trust in which case the property reverts to the settlor's estate. In this case, the value of the transfer for gift tax purposes was only $968,275, despite the fact that the property was valued at $2.5 million and would likely appreciate in value over the ten-year trust term. I.R.C. § 2702. 26 C.F.R. § 25.2702-5. See Pless, PRTs and QPRTs: Shelter from Taxation, 7 Probate & Property 13 (1993).

The QPR trust has certain drawbacks as well. The transfer

of property to the trust triggers immediate gift tax liability. If the settlor dies during the trust term, the property reverts to the estate, and estate taxes must be paid on the value of the property. Third, property transferred under these trusts does not receive a step up in basis, as it would if estate taxes were paid. Also, when the trust terminates, the settlor irrevocably loses her right of possession and can be made to leave the home. See *id.* at 13.

In creating this trust to minimize the tax burden on the transfer of this property, the plaintiff overlooked the fact that the generation-skipping transfer tax (GST tax) would apply to the transfer from the QPR trust to the nominee trust at the end of the trust term. I.R.C. § 2601. The GST tax generally applies whenever a gift or bequest skips one or more generations, such as a gift from grandparents to grandchildren.[4] I.R.C. §§ 2611, 2612. The GST tax imposes a flat fifty-five per cent tax on the full value of the property transferred. I.R.C. §§ 2602, 2641, 2001. In this case, the sole beneficiaries of the QPR trust, albeit through a series of trusts, are the plaintiff's grandchildren. Therefore, if the plaintiff survives until the end of the trust term, the property will be transferred to trusts benefitting the grandchildren, and the QPR trust will be subject to a tax on fifty-five per cent of the then full fair market value of the property.[5] Even if the property does not appreciate in value, the trust will owe $1,375,000 under the GST tax.[6] This GST tax could have been avoided completely by naming as the beneficiaries the plaintiff's children rather than her grandchildren.

The reformation of the trust will not, of course, avoid all tax liability because the children of the settlor will be liable for transfer taxes when the residence is eventually handed

[4]The GST tax makes an exception where the parents of the grandchild are deceased, but that provision is not applicable here. I.R.C. § 2612 (c) (2).

[5]If the plaintiff does not survive the trust term, then the property reverts back to the plaintiff's estate. Estate tax would then be assessed against the property, but no GST tax would be due since no transfer to the grandchildren would take place (unless the plaintiff has made separate arrangements under her will to make bequests to the grandchildren).

[6]There is an exemption of $1 million which may be allocated to any property subject to the GST tax. I.R.C. § 2631. The plaintiff seeks to avoid using this exemption because she has made other gifts to the grandchildren to which she wants to apply this exemption.

down to their children. The purpose of the GST tax is to prevent the avoidance of one level of tax liability by the device of passing property directly to the grandchildren and thereby avoiding the transfer tax on the property when it would have passed from the children of the settlor to the grandchildren. Although the GST tax was meant to approximate this second level of transfer tax, the GST tax is more burdensome for many taxpayers than a second generation of ordinary gift or estate taxes. See Lowin, The Tax on Generation-Skipping Transfers, Understanding Basic Estate Planning 177, 188 (PLI 1993). For example, the GST tax imposes a flat rate equal to the highest marginal estate tax rate whereas the estate and gift taxes are bracketed, imposing lower rates for the first $3 million.[7] I.R.C. §§ 2001, 2641. Lowin, *supra* at 177.

After discovering the potential GST tax liability, the plaintiff filed suit to have this court reform the trust instrument by substituting the plaintiff's children for the nominee trust as beneficiaries of the QPR trust pursuant to our equity powers under G. L. c. 215, § 6 (1994 ed.).[8] The trustees of each of the trusts benefitting the plaintiff's grandchildren have stipulated to the relevant facts and assented to this reformation. The single justice, at the request of the plaintiff, appointed a guardian ad litem to represent the interests of the grandchildren and persons unborn who may be interested. The guardian ad litem also stipulated to the facts and assented to this reformation. The office of the Commissioner of the Internal Revenue Service, although served, chose not to participate in this proceeding.

## II

Although the reformation of the QPR trust has Federal tax

---

[7]In addition, the middle generation could create deferral of taxes by holding the property for some time before transferring it. The I.R.C. contains numerous exemptions and other methods of tax reduction that the middle generation might be able to take advantage of that the settlor may have already used or may not be able to use. See, e.g., I.R.C. § 2010 (grants a $192,800 credit against taxes incurred to every estate).

[8]To have effect, such a reformation should be done in this court as the Internal Revenue Service need not accept decisions other than those of a State's highest court. *Commissioner of Internal Revenue* v. *Estate of Bosch*, 387 U.S. 456, 465 (1967). See *Shawmut Bank, N.A.* v. *Buckley*, 422 Mass. 706, 710 (1996).

consequences, "any modification of the trust agreement to conform with the settlor's intent . . . is 'clearly a matter of State law' which this court may properly decide." *Berman* v. *Sandler*, 379 Mass. 506, 508-509 (1980), citing *Babson* v. *Babson*, 374 Mass. 96, 101-102 (1977). The sole question on the merits is whether reformation of the trust is appropriate in the circumstances. We find that reformation of the trust by substituting the plaintiff's children for the nominee trust (which benefits the grandchildren) as beneficiaries of the QPR trust is justified by the doctrine of mistake.[9]

"It is settled that a written instrument, including a trust, will be reformed on the grounds of mistake upon 'full, clear, and decisive proof' of the mistake." *Berman* v. *Sandler, supra* at 509, quoting *Richardson* v. *Adams*, 171 Mass. 447, 449 (1898). Unlike the law of contracts, a mistake is generally made out by a unilateral mistake by the settlor since the settlor typically receives no consideration. *Berman, supra* at 510. 4 A. Scott, Trusts § 333.4 (4th ed. 1989). A mistake by the settlor concerning the Federal estate and gift tax consequences of a provision of the trust justifies reformation. 4 A. Scott, *supra.* See *First Agric. Bank* v. *Coxe*, 406 Mass. 879, 883 n.6 (1990) ("fine tuning of the administration of the trusts . . . in order to reduce, if not eliminate, the application of the GST tax").

The plaintiff provides ample proof that a mistake was made as to the tax consequences of naming the nominee trust as the sole beneficiary of the QPR trust and that she would have named her children beneficiaries had she understood the implications of her choice. In determining whether a mistake has been made, we must determine the settlor's intent and

[9]The doctrine of frustration of purpose would also justify reformation in these circumstances. *Clymer* v. *Mayo*, 393 Mass. 754, 763-764 (1985) (courts "are empowered to terminate or reform a trust . . . where its purposes have become impossible to achieve"). There is ample evidence that the sole purpose of the QPR trust was to minimize taxes as the property passed from the settlor to the next generations in the plaintiff's family, and the Federal tax law authorizing the QPR trust was written to facilitate this purpose. Because of the GST tax, this purpose cannot be fully realized by the QPR trust without reformation. Because of the nature of the mistake made here, the analysis of mistake and frustration of purpose are virtually identical. The mistake made relates directly to the primary purpose of the trust — transferring the property to the plaintiff's issue with the least possible tax liability. Thus, the relevant intent for purposes of mistake analysis is the same as the over-all purpose for frustration of purpose analysis.

then decide whether the questioned provision satisfies that intent. *Berman, supra* at 510. "To ascertain the settlor's intent, we look to the trust . . . as a whole . . . ." *Id.* It is firmly established that considering tax implications is proper when inferring intent. *Berman, supra* at 511 n.6. *Pastan* v. *Pastan,* 378 Mass. 148, 155 (1979). In the area of trusts and estates, the reduction of taxes is often not just a factor affecting intent, but rather the overriding purpose of the entire transaction. The QPR trust instrument itself does not explicitly state that all provisions should be construed in such a way as to minimize tax liability, but "[i]nherent in the provisions . . . is the intent that no general provision should be applied to produce a Federal estate (or GST tax) result that would solely benefit the Federal tax gatherers." *First Agric. Bank* v. *Coxe, supra* at 883. It cannot reasonably be disputed that this intent to reduce the Federal tax burden was the overriding motivation in creating the QPR trust, and the tax provision on which the settlor relied was written for this purpose.[10] In fact, there is no other rational reason to incur immediate gift taxes[11] and contend with the other drawbacks of the QPR trust provisions, *supra,* when the property could be transferred much more simply through a will at the death of the plaintiff. Having determined that the reduction of taxes is the settlor's "over-all intent," "our task is . . . to carry out [her] over-all intent, rendering ineffective any conflicting provision in [her] [trust] to the extent necessary in order to fulfil that over-all intent." *Putnam* v. *Putnam,* 366 Mass. 261, 270 (1974). We therefore reform the QPR trust such that in the event the plaintiff survives the trust term, the beneficiaries of

---

[10]We find it persuasive that the trustees of all four trusts for the benefit of the grandchildren as well as the guardian ad litem agree that the reformation is in the best interests of the grandchildren even though they will no longer be the beneficiaries of the QPR trust.

Even assuming that the overriding purpose was to ensure that the grandchildren in particular were given the opportunity to possess and enjoy the property, reformation would be proper because the GST tax would defeat this intent as well. The trust would be liable for the over $1 million in taxes. The trust could not satisfy that liability without selling the property that the settlor has gone to such lengths to convey intact.

[11]On transferring the property to the trust, the plaintiff became liable for gift taxes on the discounted value of the property.

the trust will be her two children[12] rather than the nominee trust.

                                                    *So ordered.*

---

[12]Lorri S. Owades and Sherri A. Mahne.