STANTON W. PUTNAM *vs.* STANTON W. PUTNAM & others.[1]

Suffolk. May 8, 1997. - August 18, 1997.

Present: WILKINS, C.J., ABRAMS, O'CONNOR, GREANEY, & MARSHALL, JJ.

*Trust,* Reformation, Settlor, Charitable trust, Remainder interests.

The reformation of a qualifying charitable unitrust, the sole asset of which
    was a parcel of real estate, was appropriate in order to limit the required
    distributions to noncharitable beneficiaries to the income of the trust, as
    permitted by I.R.C. § 664(d)(3), where that conformed with the settlor's
    intention when he created the unitrust to benefit the charitable remainder
    interests and where the trust, as written, would greatly reduce the tax
    benefits that he intended to flow from the unitrust's creation. [771-773]

CIVIL ACTION commenced in the Suffolk Division of the
Probate and Family Court Department on July 17, 1996.

The case was reported to the Appeals Court by *Anthony R.
Nesi*, J. The Supreme Judicial Court granted a request for direct
appellate review.

*Daniel W. Doherty & R. David Beck*, for Stanton W. Putnam,
submitted a brief.

WILKINS, C.J. Here on direct appellate review is a reservation
and report of an action seeking the reformation of the Stanton
W. Putnam charitable remainder unitrust (unitrust). The plaintiff
settlor of the unitrust (Putnam) contends that the trust instru-
ment, drafted by a lawyer now deceased, provides for annual
distributions to Putnam or to a named successor (King) that (a)
are inconsistent with his intent to benefit the charities that have
remainder interests in the unitrust and (b) greatly reduce the tax
benefits that he intended to flow from the unitrust's creation.

All named defendants have assented to the reformation of the
unitrust. The judge reported the case on the facts stated in the
complaint and did so on the assumption that the Internal

[1]David King, The Church of the Advent, The Church of St. Mary's of the
Harbor, The Truro Conservation Trust, and the Attorney General of the Com-
monwealth.

Revenue Service, which is not a party, would be bound only by a decision of this court, a point on which we express no view. The record has been supplemented on appeal by additional facts.

Putnam created the unitrust on December 29, 1989. The trust owns real estate in Truro which has an estimated value of less than $400,000. The property, which is for sale, has produced no income to the trust. Putnam expected to receive no distribution from the trust and did not review the terms of the trust when he executed it. In fact, the trust instrument directs the trustee annually to distribute "first from the net income, and to the extent that such net income is insufficient, from the principal of the trust, an amount (the 'unitrust amount') equal to ten percent of the net fair market value of the trust assets." The distributions are to be made quarterly to Putnam during his life and then to King, if he survives Putnam, for life but for no more than twenty years from Putnam's death. Then the trust assets are to be distributed in equal shares to the named charities.[2]

A charitable remainder trust provides for a specified distribution, at least annually, to one or more beneficiaries, at least one of which is not a charity, for life or for a term of years, with an irrevocable remainder interest in one or more charities. I.R.C. § 664 (1994); Treas. Reg. § 1.664-1(a) (1997). The plaintiff's unitrust qualifies as a "charitable remainder unitrust" under § 664(d)(2) of the I.R.C. Each year, subject to an exception we shall discuss later, a charitable remainder unitrust must distribute a fixed percentage (which may not be less than five percent) of the net fair market value of the assets valued each year, to one or more noncharitable beneficiaries (also called "income beneficiaries") for a certain term. I.R.C. § 664(d)(2)(A). At the end of the term, the trust assets pass to, or for the use of, one or more qualified charities. I.R.C. § 664(d)(2)(C). The unitrust conforms to these requirements, but its mandate that ten percent of the value of the trust assets be distributed annually reduces substantially the prospective value of the charitable remainders.

An exception to the fixed percentage distribution requirements just discussed permits distribution of only net income to a noncharitable beneficiary. I.R.C. § 664(d)(3). This method

---

[2]The trust instrument grants the trustee the power to amend the terms of the trust for the purpose of complying with the requirements of a qualified charitable remainder unitrust under the Internal Revenue Code.

obviously protects the trust principal from intrusion. Putnam relies on this provision in seeking to reform the unitrust instrument to conform to what he intended when he created the unitrust.

We have allowed the reformation of an ambiguous trust instrument based on extrinsic evidence of the settlor's intent and provisions in the instrument that showed that the lawyer who drafted it failed to carry out the settlor's intent. *Berman* v. *Sandler*, 379 Mass. 506, 510-511 (1980). We have also allowed reformation of trust instruments that were not ambiguous but which produced results that were proved to be clearly inconsistent with the settlor's estate tax objectives. See *Pond* v. *Pond*, 424 Mass. 894, 898-899 (1997); *Simches* v. *Simches*, 423 Mass. 683, 687-688 (1996); *Loeser* v. *Talbot*, 412 Mass. 361, 365 (1992). See Restatement of Property (Donative Transfers) § 12.2 (Tent. Draft No. 1, 1995). In deciding trust reformation issues, we have made no distinction based on whether the settlor was living when the case was presented for decision. See *Berman* v. *Sandler*, *supra* at 510. Indeed, the crucial evidence of intent and mistake may well be available from the lawyer who drafted (or misdrafted) the instrument rather than from the settlor. Nor have we made any distinction based on whether a trust instrument was or was not ambiguous.[3]

The existence of a mistake in the drafting of a trust instrument must be established by "full, clear, and decisive proof." *Berman* v. *Sandler*, *supra* at 509, quoting *Coolidge* v. *Loring*, 235 Mass. 220, 224 (1920), quoting *Richardson* v. *Adams*, 171 Mass. 447, 449 (1898). That standard is similar to proof by "clear and convincing evidence." See Restatement of Property

---

[3]We have disallowed extrinsic evidence to "explain" the terms of an unambiguous will. See *Putnam* v. *Putnam*, 366 Mass. 261, 266 (1974), and cases cited. The circumstances known to the testator at the time of the will's execution have been admissible, however, in aid of interpreting a will to ascertain the testator's intent. *Id.* at 266-267.

For reasons that may no longer be meaningful, we have been less willing to recognize the possibility of proof of mistake in the drafting of a will (as opposed to an inter vivos trust) that is unambiguous on its face. The case may be hard to make, however, for denying reformation of a will where, in substantively similar circumstances, we would allow reformation of a trust instrument. See Restatement of Property (Donative Transfers) § 12.1 comment c (Tent. Draft No. 1 1995). Evidence of intention, perhaps inadmissible for the purpose of interpretation of a trust instrument, may be relevant and admissible on the issue of mistake, that is, to support the reformation of the instrument.

(Donative Transfers) § 12.1 (Tent. Draft No. 1, 1995). The point is not, however, so much that the burden of proof is heightened as it is that the judge who considers the reformation claim must make thorough and reasoned findings that deal with all relevant facts and must demonstrate a conviction that the proof of mistake was clear and well-founded.

The unitrust with which we are concerned in this case is not ambiguous. One might create such a trust, although in practical terms the trust might generate limited benefits for the charity or charities and thus limited tax benefits for the settlor. In this case, however, it seems clear that the settlor was not interested in receiving significant distributions of principal from the trust. The trust assets, real estate in Truro, had not been sold and had produced no income. The charitable gifts, with the related tax benefits, appear to have been the settlor's goal in creating the unitrust. The provision for distribution of ten percent of the fair market value of the trust assets each year, made up first from income and then from principal to the extent needed, would considerably deplete the amounts likely to be available for the charities. A reformation of the trust to limit distributions to non-charitable beneficiaries to the income of the trust, as I.R.C. § 664(d)(3) permits, is appropriate in the circumstances.

The request for an award of attorney's fees and costs payable from the assets of the unitrust is denied. The lawyer who made the drafting error was a member of the firm that appears for the plaintiff to correct the error. A judgment shall be entered in the Probate and Family Court allowing the amendment of the unitrust in the form set forth in the first request for relief of the complaint.[4]

*So ordered.*

---

[4]The record in this case is unnecessarily scant. We have not been furnished with calculations showing the difference in the value of the charitable gifts under the trust (a) as drafted and (b) as reformed. We have not even been given the ages of the noncharitable income beneficiaries, facts that are crucial in calculating the date on which the charities will likely be paid. We do not know whether Putnam ever received income from the real estate now in the trust. Nor do we have an affidavit from Putnam (and perhaps others) stating his intention in creating the trust. Although on the facts of this case the charitable giving and tax objectives are sufficiently apparent to permit reformation of the trust instrument, the requirement of clear and decisive proof in such cases counsels that a full factual record supporting reformation be made.