E. Virginia Walker & another,[1] trustees,[2] vs. E. Virginia
Walker & others.[3]

Suffolk. February 6, 2001. - March 23, 2001.

Present: Marshall, C.J., Greaney, Ireland, Spina, Cowin, Sosman, & Cordy, JJ.

*Trust,* Mistake, Taxation, Power of appointment, Reformation, Settlor. *Taxation,* Estate tax.

This court allowed the reformation of a trust instrument that produced tax results that were clearly inconsistent with the intent of the settlor. [587-588]

Civil action commenced in the Supreme Judicial Court for the county of Suffolk on August 26, 1997.

The case was reported by *Greaney,* J.

*Robert J. O'Regan (Kenneth A. Johnson* with him) for the plaintiffs.

Marshall, C.J. The plaintiffs commenced this action in the Supreme Judicial Court for Suffolk County pursuant to G. L. c. 215, § 6, seeking to reform the Donald D. Walker Revocable Trust. They alleged that, due to a mistake, the trust as presently written fails to accomplish the settlor's goals. Because of the Federal tax implications discussed below, and because it is uncertain whether the Internal Revenue Service would abide by a decision on a matter of State law, such as this, other than a decision from the State's highest court, see *Loeser* v. *Talbot,* 412 Mass. 361, 362 (1992), a single justice reported the case to the full court.

The plaintiffs are the trustees of the trust. The defendants are the presently identifiable beneficiaries of the trust and the Commissioner of Internal Revenue (commissioner). As commonly

[1]Rockland Trust Company.
[2]Of the Donald D. Walker Revocable Trust.
[3]Penelope B. Walker; Marcia B. Walker; and the Commissioner of Internal Revenue.

happens when the commissioner is named as a defendant and served with process in a case such as this, he has chosen not to participate. *Berman* v. *Sandler*, 379 Mass. 506, 509 n.5 (1980). All of the other parties have stipulated to the relevant facts, and each of the defendants other than the commissioner has assented to the relief sought. A guardian ad litem has been appointed to represent the interests of any unborn or unascertained individuals; the guardian ad litem also has joined in the stipulation of facts and assented to the relief sought.

Before proceeding to the merits, we pause briefly to observe that it is not only permissible, but also in keeping with this court's long-standing practice, for us to decide cases such as this despite the fact that they lack some of the usual adversary characteristics. This court has decided many of these "uncontested" cases, which call for interpretation or reformation of trust instruments under Massachusetts law, because the parties have represented that a decision from this court will facilitate their dealings with the Internal Revenue Service.[4] We do so because we are mindful of the fact that the Internal Revenue Service and the Federal courts are not bound by decisions of lower State courts. See *Simches* v. *Simches*, 423 Mass. 683, 686 n.8 (1996); *Berman* v. *Sandler, supra* at 509; *Persky* v. *Hutner*, 369 Mass. 7, 8 (1975).[5]

We have decided cases like this not only when parties have been actively engaged in disputes with the Internal Revenue Service, but also, on occasion, when parties have sought deci-

---

[4]Recent examples include *DiCarlo* v. *Mazzarella*, 430 Mass. 248 (1999); *Fleet Bank, N.A.* v. *Fleet Bank, N.A.*, 429 Mass. 1003 (1999); *BankBoston* v. *Marlow*, 428 Mass. 283 (1998); *Putnam* v. *Putnam*, 425 Mass. 770 (1997); *Pond* v. *Pond*, 424 Mass. 894 (1997); and *Simches* v. *Simches*, 423 Mass. 683 (1996).

For a thorough explanation of the court's approach, see *Dana* v. *Gring*, 374 Mass. 109, 113-115 (1977), and *Babson* v. *Babson*, 374 Mass. 96, 101-103 (1977).

[5]We are confident that litigants and attorneys who bring cases such as this before us do not do so lightly. We expect that, in the interest of conserving scarce judicial resources as well as their own resources, they will explore, whenever practicable, alternative resolutions satisfactory to the Internal Revenue Service. We also take this opportunity to remind litigants and attorneys that, when they bring such cases before us, we require (as the parties in this case have provided) a full and proper record and the requisite degree of proof that they are entitled to the relief they seek.

sions that would enable them to plan their estates correctly and to prepare effectively for future tax consequences. See *Putnam* v. *Putnam*, 425 Mass. 770 (1997); *Simches* v. *Simches*, *supra*; *Shawmut Bank, N.A.* v. *Buckley*, 422 Mass. 706, 709-710 (1996), citing *Billings* v. *Fowler*, 361 Mass. 230, 233-234 (1972). However, we have declined to decide cases in inappropriate circumstances, such as where no question of State law and only a question of Federal law is presented. See *Kirchick* v. *Guerry*, 429 Mass. 215 (1999). Because we are satisfied that the present case is appropriate for our consideration, we now proceed to the merits.

1. *Facts.* Donald D. Walker (Donald), settlor of the Donald D. Walker Revocable Trust, dated April 27, 1988, died on January 31, 1989. He was survived by his spouse, E. Virginia Walker (Virginia), and two children, Marcia B. Walker and Penelope B. Walker. The trust instrument identifies Donald and Virginia as the initial cotrustees, and they served in that capacity until Donald's death, at which time Virginia became the sole trustee. In accordance with the terms of the trust, Virginia subsequently appointed Rockland Trust Company to serve as cotrustee.[6] The trust was revocable during Donald's lifetime and became irrevocable on his death.

The trust instrument called for distribution of the trust property, on Donald's death, to one or more of three trusts: a general marital trust, a special marital trust, and a nonmarital deduction trust. Article III, paragraph A, which creates the general marital trust, Article III, paragraph B, which creates the special marital trust, and Article IV, which sets forth various administrative provisions for the two marital trusts, expressly indicate that those trusts were intended and designed to provide Donald's estate with the maximum marital deductions permitted

---

[6]Virginia and Rockland Trust Company continue to serve as cotrustees. Virginia has named her children, Marcia and Penelope, to serve as successor cotrustees (along with Rockland Trust Company) in the event that she ceases to serve as trustee for any reason.

At the time the parties filed their statement of agreed facts, Virginia was eighty-one years old, Marcia was forty-eight years old, and Penelope was forty-two years old. Marcia and Penelope are Donald's only issue; neither one of them is married or has any children.

by law for purposes of Massachusetts and Federal estate taxes,[7] and that they should be interpreted and administered accordingly. Under the terms of both marital trusts, Virginia is to receive net income generated from any property in those trusts during her lifetime. Under Article III, paragraph C, entitled "Payments of Principal from Marital Trusts," the trustees are also authorized to distribute to Virginia, during her lifetime, all or any portion of the principal of those trusts as they deem in their discretion to be advisable, and Virginia, as beneficiary, also has the power to demand all or any portion of the principal of the general marital trust during her lifetime.

In Article III, paragraph A, Virginia is granted the power to appoint, in her own will, the principal of the general marital trust, as well as any income that has accrued but remains undistributed at the time of her death. Her power of appointment expressly includes the power to appoint general marital trust principal to her own estate. In Article III, paragraph B, she is granted the power to appoint, in her will, special marital trust principal to one or more of Donald's issue and their spouses.

Under the express terms of Article III, paragraphs A and B, the general marital trust and the special marital trust were to be funded only to the extent necessary to eliminate (or minimize as far as possible) the Federal and Massachusetts estate taxes on Donald's estate.[8] Because of the size of Donald's estate, however, no estate taxes would have been due when he died, so no property from the Donald D. Walker Revocable Trust was

---

[7]Article III, paragraph A provides in relevant part: "if any part of the Grantor's estate is subject to the Massachusetts estate tax, then there shall be set aside in a separate trust, to be known as the General Marital Trust, an amount (the 'general marital amount') equal to the maximum marital deduction allowable in determining the Grantor's Massachusetts estate tax . . . provided, however, that the general marital amount shall not exceed the minimum amount which . . . would eliminate the Massachusetts estate tax otherwise payable by reason of the Grantor's death after taking into account all credits, exemptions, and other deductions."

Article III, paragraph B provides in relevant part: "there shall be set aside as a separate trust, to be known as the Special Marital Trust, the smallest amount (the 'special marital amount') which if given outright to [Virginia] at the Grantor's death would eliminate or minimize insofar as possible the total federal and state estate taxes otherwise payable by reason of the Grantor's death after taking into account all credits, exemptions, and deductions."

[8]See note 7, *supra.*

distributed to either of the marital trusts. Those trusts went unfunded. Only the nonmarital deduction trust was funded. It received all of the trust property.[9]

Under Article III, paragraph D, which creates the nonmarital deduction trust, Virginia is to receive, during her lifetime, the net income generated from the principal of that trust. On her death, the principal is to be paid to Donald's then living issue. Unlike the language in the marital trusts, the language creating the nonmarital deduction trust gives Virginia no right, as beneficiary, to appoint principal through her will. However, Article III, paragraph F, entitled "Discretionary Power to Pay Principal," which applies to the nonmarital deduction trust, gives Virginia, in her capacity as trustee, unbridled discretion to pay principal from the nonmarital deduction trust to herself as beneficiary. As explained below, it is this language that the parties contend was mistakenly included in the trust document. Specifically, Article III, paragraph F states:

> "In addition to the payments of income hereinabove provided, the Trustee is (or Trustees are) authorized at any time or from time to time to make or apply distributions or payments of principal of the trust property to or for the benefit of the Grantor's said spouse, E. Virginia Walker, in such portions or amounts, including the entire trust property, as the Trustee or Trustees may deem advisable. In making the discretionary payments or distributions of principal under this paragraph F, it is the Grantor's desire that the Trustee or Trustees exercise the power to make such payments or distributions in a liberal manner, and so may, but need not, take into account other resources available to said beneficiary."

The inclusion of this provision giving Virginia, as trustee, the authority to make discretionary payments of principal to herself, as beneficiary, constitutes a general power of appointment within the meaning of I.R.C. § 2041 (b) (1) (1986). As a result, the property subject to the power, in other words all property in the

---

[9]The parties state in their stipulation of facts that the marital trusts, had they been funded, would not have been subject to estate taxes on Donald's death, but would have been includible in Virginia's Federal and Massachusetts gross estates pursuant to I.R.C. §§ 2041 & 2044 (1986) and G. L. c. 65C, §§ 1 et seq.

nonmarital deduction trust, will be includible in Virginia's gross estate at the time of her death, regardless whether she exercises the power. I.R.C. § 2041 (a) (2) (1986). The parties claim that this result is contrary to Donald's intent to have the nonmarital deduction trust property pass free of estate taxes in both his estate and Virginia's estate. To support their claim that Donald so intended, they rely on the structure and language of the trust instrument and on an affidavit from the attorney who drafted the instrument. That attorney, now retired, states in his affidavit as follows:

> "5. I do not recall specific discussions with Mr. Walker as to whether he intended the assets in the Non-marital Deduction Trust to pass free of estate taxes following Mrs. Walker's death. However, my practice was to draft Non-marital Deduction Trusts so that the assets of these trusts would pass free of estate taxes upon the deaths of both the donor and the donor's spouse.

> "6. My memory as to Mr. Walker's intentions has been aided by a review of the Walker Trust and correspondence from me to Mrs. Virginia Walker following Mr. Walker's death.

> "7. With the aid of these documents, it is my memory that Mr. Walker intended the assets in the Non-marital Deduction Trust to pass free of estate taxes upon Mrs. Walker's death.

> "8. I believe that the relief which the plaintiffs request in the Complaint, including limiting Mrs. Walker's discretion as Trustee over the principal of the Non-marital Deduction Trust by an ascertainable standard, will conform the Walker Trust to Mr. Walker's intent, by removing the assets of the Non-marital Deduction Trust from Mrs. Walker's gross estate."

The parties ask that we permit the trust to be reformed in three respects: (1) by inserting a so-called ascertainable standard in Article III, paragraph F, which would limit the scope of Virginia's power as trustee under that paragraph in a way that would cause her not to have a general power of appointment; (2) by inserting in Article V, which governs the succession of

trustees, a provision requiring that there be a corporate cotrustee serving at all times; and (3) by inserting a new paragraph in Article V reciting Donald's intention (a) that no principal or income of any trust be included in the estate of any trustee, (b) that no trustee have the power to act in any fashion that would subject his or her estate to estate taxes, and (c) that in the event a trustee's estate would be so affected, his or her power to act may be exercised only by a cotrustee who will not be so affected. The parties maintain that these changes will ensure, as Donald intended, that the property in the nonmarital deduction trust not be included in Virginia's gross estate for estate tax purposes.[10]

2. *Discussion.* It is well settled that, as a matter of Massachusetts law, a trust instrument may be reformed to conform to the settlor's intent. *DiCarlo* v. *Mazzarella,* 430 Mass. 248, 250 (1999). *Putnam* v. *Putnam,* 425 Mass. 770, 772 (1997). *Simches* v. *Simches,* 423 Mass. 683, 686-687 (1996). Thus "[w]e may require the trust to be reformed on clear and decisive proof that the instrument fails to embody the settlor's intent because of scrivener's error." *DiCarlo* v. *Mazzarella, supra.* See *Shawmut Bank, N.A.* v. *Buckley,* 422 Mass. 706, 714 (1996). "We have allowed the reformation of trust instruments which produced tax results that were clearly inconsistent with the settlor's tax objectives." *BankBoston* v. *Marlow,* 428 Mass. 283, 285 (1998). See *Putnam* v. *Putnam, supra,* and authorities cited.

"To ascertain the settlor's intent, we look to the trust instrument as a whole and the circumstances known to the settlor on execution." *DiCarlo* v. *Mazzarella, supra* at 250, quoting *Pond* v. *Pond,* 424 Mass. 894, 897 (1997). In addition, we have indicated our willingness to accept extrinsic evidence, such as an attorney's affidavit, that demonstrates that there has been a mistake. "Indeed, the crucial evidence of intent and mistake may well be available from the lawyer who drafted (or mis-

---

[10]The parties indicate that the value of the nonmarital deduction trust assets shortly before they filed their stipulation of facts was $798,931. To illustrate the effect that the requested reformation might have on her estate, they have supplied us with calculations demonstrating that, had she died in 1998 (when the stipulation was filed), Virginia's estate would have recognized a savings of $365,476 in total Federal and Massachusetts estate taxes as a result of reformation.

drafted) the instrument rather than from the settlor." *Putnam* v. *Putnam, supra* at 772. See *Loeser* v. *Talbot*, 412 Mass. 361, 366 n.7 (1992); *Berman* v. *Sandler*, 379 Mass. 506, 511 (1980).

The evidence in this case more than adequately demonstrates that Donald, as settlor of the Donald D. Walker Revocable Trust, intended to eliminate, or to minimize to the fullest extent possible, any adverse estate tax consequences not only to his own estate, but also to Virginia's estate. He did this by availing himself of the maximum marital deductions permitted by Massachusetts and Federal law in the general and special marital trusts, by funding those trusts only to the extent needed to take advantage of those deductions, and by giving Virginia no power as beneficiary of the nonmarital deduction trust to appoint principal of that trust. The absence of a power (as beneficiary) to appoint nonmarital deduction trust property plainly was intended to keep the property from being included in her gross estate.[11] Moreover, we have in this record the drafting attorney's affidavit confirming both the settlor's and his intentions to construct the nonmarital deduction trust such that the trust property would not be included in Virginia's estate.

To remedy the unintended result, the parties seek to reform Article III, paragraph F by inserting a so-called ascertainable standard governing trustee distributions of principal to Virginia, and by deleting the problematic language concerning liberal discretionary distributions. Inclusion of an ascertainable standard will effectively negate a general power of appointment, I.R.C. § 2041 (b) (1) (A), remove the nonmarital deduction trust property from Virginia's estate, and thereby conform the instrument to Donald's intent. The standard sought to be imposed tracks the language of I.R.C. § 2041 (b) (1) (A).[12] For the reasons stated herein, we shall allow this proposed reformation.

[11]The inclusion of powers of appointment in the General marital trust and special marital trust apparently was intended to comply with the requirements for a marital deduction applicable at that time.

[12]The parties propose to reform Article III, paragraph F to read as follows: "*Power to Pay Principal.* In addition to the payments of income hereinabove provided, the Trustee is (or Trustees are) authorized at any time or from time to time to make or apply distributions or payments of principal of the trust property to or for the health, education, support or maintenance of the Grantor's said spouse, E. Virginia Walker, in such portions or amounts, including the entire trust property, as the Trustee or Trustees may deem advisable."

The plaintiffs represent that this reformation of Article III, paragraph F will ensure that, "regardless of the identity of the trustee, or of application of fiduciary standards to the trustee's conduct in office, Mrs. Walker will not possess a general power of appointment and the assets of the Non-marital Deduction Trust would not be included in her gross taxable estate." Nevertheless, they also ask that we reform the trust instrument by inserting two other provisions that they claim will "further" Donald's intent.[13] They make no argument that these additional provisions are necessary to effectuate Donald's intent. We therefore decline to address these provisions.

3. *Conclusion.* We remand this case to the county court for entry of a judgment reforming Article III, paragraph F of the Donald D. Walker Revocable Trust in conformance with this opinion.

*So ordered.*

---

[13]First, they propose inserting, in Article V, a requirement that "there shall be at all times one corporate Trustee serving hereunder provided that such corporate Trustee must be a trust company or bank qualified to act as such in Massachusetts, possessing trust powers, and having a combined capital and surplus of not less that $10,000,000[]," and "that upon the removal of the corporate Trustee serving hereunder, there shall be a replacement corporate Trustee to serve in its place."

They also propose inserting the following language in Article V: "It is the Grantor's intention that no part of the principal or income of any of the trusts hereunder shall ever be included for estate tax purposes in the estate of any Trustee hereunder by reason of any right, power or authority conferred, or any duty imposed, upon said Trustee, and the Grantor directs that any Trustee whose estate may be thus affected for estate tax purposes shall not[] possess under this Trust any such right, power or authority, or be subject to any such duty, and such rights, powers, authorities and duties shall be exercised only by a Trustee who will not be so affected."