U.S. TRUST COMPANY, N.A., trustee,[1] *vs.* ATTORNEY GENERAL & others.[2]

Plymouth. September 5, 2006. - October 12, 2006.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, & CORDY, JJ.

*Trust,* Reformation. *Taxation,* Estate tax.

In an action seeking the reformation of a trust benefiting graduating students of a certain town's public high school, which was the only such school at the time of the trust's establishment, this court concluded the trust should be reformed, in conformity with the settlor's intent, to allow scholarships to graduating students of both currently existing high schools in the town, and to address the potential for new high schools in the future [526-527]; this court declined, however, to permit reformation of the trust to allow the schools' respective scholarship committees unlimited discretion as to the number of scholarships to be awarded [527-528], or to empower the trustee to increase the aggregate amount of scholarship money awarded each year according to a certain formula linked to a provision of the Internal Revenue Code [528-529].

CIVIL ACTION commenced in the Plymouth Division of the Probate and Family Court Department on May 2, 2005.

The case was reported to the Appeals Court by *Michael J. Livingstone*, J., on a statement of agreed facts. The Supreme Judicial Court granted a request for direct review.

*W. Sanford Durland III* for the plaintiff.

GREANEY, J. State Street Bank and Trust Company of New England, N.A., as trustee, commenced this action in the Plymouth Division of the Probate and Family Court Department, seeking the reformation of a trust established by the late George L. Gooding, pursuant to a declaration of trust dated May 10, 1950, as amended and modified (trust).[3] The trust currently

---

[1]Under a declaration of trust executed by George L. Gooding.

[2]Commissioner of Revenue and Commissioner of Internal Revenue.

[3]On October 1, 2005, U.S. Trust Company, N.A. (U.S. Trust), became the successor in interest to State Street Bank and Trust Company of New England,

provides for the award of annual scholarships to graduating students of the Plymouth-Carver High School who are residents of Plymouth (town). The trustee named as defendants the Attorney General and the Commissioner of Revenue, both of whom have assented to the requested relief, and the Commissioner of Internal Revenue, who did not appear and was defaulted pursuant to Mass. R. Civ. P. 55 (a), 365 Mass. 822 (1974).

A Probate and Family Court judge reported the case to the Appeals Court on a statement of agreed facts, and we granted the trustee's application for direct appellate review. See *Commissioner of Internal Revenue* v. *Estate of Bosch*, 387 U.S. 456, 465 (1967); *Walker* v. *Walker*, 433 Mass. 581, 582 & n.4 (2001). For reasons stated herein, we conclude that the proposed reformation should be allowed in part and denied in part.

The following recitation of facts is based on assertions contained in the statement of agreed facts. On May 10, 1950, George L. Gooding transferred shares of stock from various companies in trust to the Rockland-Atlas National Bank of Boston and himself as trustees.[4] Article First of the trust provided that the net income would be paid to Gooding during his lifetime no less than quarter-annually; that Gooding reserved the right to request principal distributions from the trust during his lifetime; and that, in the event of his incapacity, the corporate trustee could pay the income for Gooding's use and benefit, together with discretionary distributions of the trust principal. Article Second provided that if, on Gooding's death, his brother, Charles W. Gooding, survived him, the corporate trustee was to pay the net income of the trust to Charles at least quarter-annually for his lifetime.

This case concerns Article Third, the original terms of which provided that, on the death of Charles (or of Gooding if Charles predeceased him), the corporate trustee would "hold the trust

N.A., and the successor trustee of the trust. The Appeals Court allowed a motion to substitute U.S. Trust as the appellant in this case, pursuant to Mass. R. A. P. 30 (b), as amended, 378 Mass. 925 (1979). For simplicity, we will refer to the appellant as "trustee" throughout this opinion.

[4] In 1961, Rockland-Atlas National Bank of Boston merged with Second Bank-State Street Trust Company to form State Street Bank and Trust Company, N.A., and in 2004, a judge in the Superior Court appointed State Street Bank and Trust Company of New England as trustee.

property in perpetuity and . . . pay the net income therefrom . . . as scholarships . . . to students of the graduate class of Plymouth High School." The school's scholarship committee was to select recipients who "desire[d] to obtain a further education in a college, junior college, or the equivalent thereof," based on "character, leadership, scholarship and need of financial assistance." The amount of each scholarship was to be $200. According to the terms of Article Third, any amount of income above the amount divisible by $200, or any scholarship not awarded by the committee, was to be added by the trustee to the income for the following year's scholarships. The scholarship fund was to be known as "The George L. Gooding and Mary D. Gooding Scholarship Fund."

In 1952, Gooding amended the trust by replacing Article Third to increase the scholarship amount to $300 or, in the sole discretion of the trustee, an amount not to exceed $400. Any excess net income was to be applied to the following years' scholarships. The provisions of Article Third otherwise remained the same.

Gooding died on November 13, 1959, predeceased by his brother Charles, and the provisions of Article Third establishing the scholarship fund went into effect at that time. In 1963, Plymouth High School became Plymouth-Carver High School. The following year, the trust was reformed, by decree of the Probate and Family Court, to provide that the annual scholarships would be awarded to graduating students of Plymouth-Carver High School who were residents of Plymouth. In 1988, a single justice of this court allowed a further modification of the trust that replaced Article Third. Article Third now provides for each scholarship amount to total at least five per cent of the trust's net income or, in the sole discretion of the trustee, an amount not to exceed ten per cent of the net income. The amounts are to be rounded to the nearest $100, and any excess is to be added to the scholarships for the following year.[5]

In January, 1988, the town of Carver opened its own public

---

[5] A slight ambiguity in various provisions of Article Third appears to have created in the minds of the trustee the understanding that the amount of each scholarship award currently is limited to $400 and that it is the aggregate scholarship amount awarded that must not exceed ten per cent of the trust's

high school. The Plymouth-Carver High School thereafter became known as Plymouth North High School, and a second public high school in the town, Plymouth South High School, opened.

The trustee seeks permission to delete the current language of Article Third and replace it with a new Article Third that would reform the trust in three respects:

> (1) by providing that scholarships be awarded "to students of the graduating classes of the high schools in the Town";

> (2) by allowing the scholarship committee discretion to determine the number of scholarships to be awarded in a given year, rather than having to divide the aggregate amount of scholarship money available that year into multiple smaller awards of equal amounts; and

> (3) by empowering the trustee to increase the aggregate amount of scholarship money awarded each year to an amount equal to the greater of the net income of the trust or the "minimum investment return," as that term is defined in § 4942 of the Internal Revenue Code (I.R.C.) (2000).[6]

We now turn to the merits.

1. We agree that the trust should be reformed to allow scholarships to students of the graduating classes of public high schools located in the town.[7] We may reform a trust instrument to conform to the settlor's intent. See *Walker* v. *Walker*, 433 Mass.

---

net income. This understanding, as was conceded by counsel for the trustee during oral argument, is incorrect. The provisions of Article Third clearly specify that the amount of each scholarship gift awarded may be up to ten per cent of the trust's net income, and that the aggregate scholarship money awarded in a given year is limited only by the amount of net income in that year. Nowhere does Article Third, as modified by this court in 1988, mention a limitation of $400 per gift.

[6]Section 4942(e)(1)(A) and (B) of the Internal Revenue Code (I.R.C.) (2000) defines "minimum investment return" as five per cent of the excess of the fair market value of assets used directly in carrying out a foundation's exempt purpose over the acquisition indebtedness for such assets. The "minimum investment return" is, for our purposes, five per cent of the market value of the trust's investment assets.

[7]Although the proposed language would permit scholarships to be paid "to

581, 587 (2001). Gooding's express intent was to establish a scholarship fund to benefit students at Plymouth High School, which was, at the time the trust was established, the only public high school serving the population of the town. Plymouth High School grew to become the Plymouth-Carver High School, which, as time passed, evolved into Plymouth North High School. The town's school system now includes Plymouth South High School, and other high schools may be built in the future. Although the names and number of the educational institutions have changed, Gooding's unconditional original express intent may be carried out by allowing modification of the trust language to reflect that change. At the present time, both Plymouth North and Plymouth South High Schools have general scholarship committees, which gather names of scholarship candidates from the respective schools and meet annually to choose the ultimate recipients of the scholarships. The trust language should also be reformed to provide language reflecting that arrangement and addressing the potential for new high schools in the future.

2. The second requested modification would allow the scholarship committees unlimited discretion as to the number of scholarships to be awarded. If allowed, this change could permit one large scholarship equal to the entire amount generated as net income from the trust to be awarded to one student. A reading of the original provisions of Article Third makes plain, however, that Gooding intended to benefit, with modest gifts of money, as many worthy and needy high school students each year as the net income of the trust would allow. Article Third, as amended and modified, permits flexibility on the part of the scholarship committees to choose the appropriate amount of each gift, so long as each gift is of equal value and between five and ten per cent of the net income. It follows that the committees already have some discretion in determining the number of recipients in any given year, as that number will correspond, in inverse proportion, to the size of the scholarship award

students of the graduating classes of the high schools located in the Town of Plymouth," it was pointed out at oral argument that this language should be modified slightly to designate students of the graduating classes of *public* high schools located in the town.

determined for that year. The gifts must be of equal value, but a variable number may be awarded each year, so long as each is of an equal amount between five and ten per cent of the trust's net income (rounded to the nearest $100). We conclude that the proposed reformation does not readily conform to Gooding's original intent or, for that matter, offer any real benefit to the trustee. The record contains nothing to support a conclusion that it has become impractical or impossible for the scholarship fund to be carried out in the mode prescribed by Gooding. See *Museum of Fine Arts* v. *Beland*, 432 Mass. 540, 544 (2000).

3. We now come to the third requested modification, which would increase the aggregate amount of scholarship money available annually to "the greater of the net income of the trust or the 'minimum investment return.' " The driving force underlying this request is a requirement of the I.R.C. that private foundations pay out, in "qualifying distributions," a certain amount of the market value of each year's investment assets by the end of the following year. See I.R.C. § 4942(c), (d), (e). Section 4942 imposes a tax of fifteen per cent on any "undistributed income" retained by the private foundation. See I.R.C. § 4942(a). In the circumstances of this case, the undistributed income on which tax is incurred would be the difference between the minimum investment return (here, five per cent of the market value of the trust's investment assets, see note 6, *supra*) and the aggregate amount awarded in scholarships. According to figures contained in the statement of agreed facts, the principal of the trust currently is in excess of $670,000, and the annual income generated by the trust is in excess of $13,000. This represents an annual return of investment of approximately two per cent. Permitting the requested changes would avoid the adverse tax consequences incurred by the trust due to the disparity between the rate of return anticipated under § 4942 and the rate of return currently generated by the trust.

The change could have far-reaching effect. If allowed, it would permit scholarships equal to five per cent of the trust's market value (according to the figures provided, $33,500) to be awarded in a given year. Such gifts would require dipping into the trust principal to a significant extent (using current figures,

by $20,500 annually), at least until the trust investments are able to achieve a rate of return that more closely approximates five per cent.[8] There is no extrinsic evidence in the record as to the circumstances of the drafting of the trust that would shed light on how Article Third might have been worded had Gooding been aware of the future tax consequences imposed by § 4942. Reading the provisions of Article Third as a whole, however, see *Hillman* v. *Hillman*, 433 Mass. 590, 593 (2001), it is immediately apparent that the requested modification conflicts with Gooding's express intent, which has survived subsequent modification, to provide scholarships "in perpetuity." Allowing the requested reformation might avoid tax liability under § 4942, but would almost certainly result in inappropriate diminution of the trust's principal.

The requested change cannot be justified by the anticipated tax savings, conceded at oral argument to be a few thousand dollars a year and which, it appears, could be paid out of the trust income. The trustee represents that payment of the tax out of the trust income would defeat Gooding's purpose of having as much income as possible used for scholarships. In those cases where we have allowed reformation in order to avoid adverse tax consequences, however, there has been some evidence in the record of either a "scrivener's error" or a clear intent on the part of the settlor to minimize, or avoid, adverse tax consequences. See, e.g., *Pierce* v. *Doyle*, 442 Mass. 1039, 1040 (2004); *Riley* v. *Riley*, 434 Mass. 1021, 1021-1022 (2001); *Fleet Nat'l Bank* v. *Wajda*, 434 Mass. 1009, 1010-1011 (2001); *BankBoston* v. *Marlow*, 428 Mass. 283, 285-286 (1998); *Pond* v. *Pond*, 424 Mass. 894, 897-898 (1997). Here there is neither. As the trust currently stands, it is possible to use some of the income for scholarships and the rest for tax without touching the principal. Under the proposed reformation, to avoid a relatively small tax, the trustee could distribute a large portion of the principal. We cannot conclude that Gooding intended this outcome.

---

[8]The problem underlying the request for reformation appears to pertain to the rate of return being obtained by the trustee. We realize that a trustee must take care to make reasonable and prudent investment decisions, but the current rate of return seems discordant with the potential rate of reasonable return that could be generated based on financially secure current market investments.

4. A judgment shall enter in the Probate and Family Court reforming Article Third of the trust, as heretofore amended and modified, by replacing all references to "the Plymouth-Carver High School" with "public high schools located in the Town of Plymouth," and providing that a scholarship committee of each school shall meet annually to select the scholarship recipients, in a designated manner agreed on by the parties. The remaining provisions of Article Third of the trust shall remain the same at this time.[9]

*So ordered.*

---

[9]In its complaint filed in the Probate and Family Court, the trustee requested an award for reasonable costs and expenses, including reasonable attorney's fees, incurred in connection with this proceeding, to be paid from the principal of the trust. The trustee has not renewed this request on appeal. Whether the trustee should be reimbursed for its attorney's fees and other costs and expenses, and in what amount, is to be determined in the discretion of the probate judge. See G. L. c. 206, § 16. See also *Rutanen* v. *Ballard*, 424 Mass. 723, 735 (1997); *Old Colony Trust Co.* v. *Third Universalist Soc'y of Cambridge*, 285 Mass. 146, 151 (1934).