DAVID L. GILPATRIC & another,[1] trustees,[2] & another[3] *vs.* HELENE E. CABOUR & others.[4] January 29, 2008. *Trust*, Reformation. *Taxation*, Estate tax.

The trustees of the Francis D. Cabour Trust (trust) and the executrix of the estate of Francis D. Cabour (settlor) commenced this action in the Probate and Family Court, seeking reformation of the trust. A judge in the Probate and Family Court reported the case to the Appeals Court, and we granted the trustees' application for direct appellate review.

*Facts.* The trustees, the executrix, and the beneficiaries of the trust have agreed to the facts. The settlor died in 2005, leaving his wife (Helene), four children, and eight grandchildren, seven of whom are minors. Helene is the executrix of his estate. Apart from tangible personal property specifically bequeathed to Helene, the entirety of the settlor's probate estate, net of the expenses of administering the estate, passed by the settlor's will to the trustees of the trust. The settlor likewise named the trustees as the beneficiaries of his individual retirement accounts.

The trust was established in 1989 and amended in 1998. The settlor intended

---

[1]Daniel Cabour.

[2]Under instrument dated October 17, 1989, executed by Francis D. Cabour as settlor and trustee.

[3]Helene E. Cabour, executrix of the estate of Francis D. Cabour.

[4]Louise E. Cabour; Daniel Cabour, individually and as parent of Julianne Cabour, a minor, Jonathan Cabour, a minor, and Lily Cabour, a minor; Yvonne Richard, individually and as parent of Denis Richard, a minor, Tanya Richard, a minor, and Julian Richard, a minor; Marion Lichtwarck, individually and as parent of Rene Lichtwarck, a minor; Milene Lichtwarck; and the Commissioner of Internal Revenue. The commissioner has not appeared or participated.

to minimize and defer taxes on his and Helene's estate to the greatest extent possible. This intent is borne out on the face of the trust and in affidavits submitted by Helene and by the drafter of the trust.

On the death of the settlor, the trustees were required to set aside as a separate share, to be called "Trust Fund No. 1," that portion of the property then held by or passing to the trustees having a value equal to the amount that, without increasing State death taxes payable on the death of the settlor, could pass free of Federal estate tax, by reason of the unified credit against Federal estate tax and the credit for State death taxes. The settlor intended that Trust Fund No. 1 would hold property with a value equal to the applicable exclusion amount determined under I.R.C. § 2010 (2000) with respect to his estate.[5] However, due to certain asserted changes in the law described below, the amount to be set aside in Trust Fund No. 1 is no longer the applicable exclusion amount, but a significantly lesser amount. The balance of the principal is to be held as a separate share called "Trust Fund No. 2." The trustees are required to pay over all of the income of both shares, at least as often as semiannually, to Helene, and, during her life, distributions of principal are permitted only to Helene.

In Article Seventh of the trust, the settlor indicated his intention that Helene, as executrix of his estate, qualify the entirety of Trust Fund No. 2 for the marital deduction allowed to estates under I.R.C. § 2056 (2000) in determining the amount on which the Federal estate tax is imposed under I.R.C. § 2001 (2000) (taxable estate). By its terms, Article Seventh would permit the executrix to accomplish this by making either a qualified terminable interest property (QTIP) election under Federal tax law or a qualified domestic trust (QDOT) election. However, Helene, the settlor's surviving spouse, is not a United States citizen, and so under Federal law, she (as the executrix of his estate) may not make a QTIP election, but may make only a QDOT election. See I.R.C. § 2056 (d). Unlike a QTIP election, which may be made with respect to either the entirety or a portion of a trust, a QDOT election may be made only with respect to an entire trust.

The parties represent that at the time the trust was amended and for several years thereafter, the Massachusetts estate tax due on the death of a taxpayer was equal to the credit for State estate taxes allowed to the estate of the taxpayer under I.R.C. § 2011 (2000) in determining Federal estate tax liability. However, they represent that in 2001, both Federal and Massachusetts tax laws were changed so that this was no longer the case.[6] In particular, the Federal estate tax credit for State estate taxes was reduced and ultimately eliminated, and Massachusetts law was amended so that the Massachusetts estate tax due on the death of a taxpayer would be equal to the credit that would have been payable had the taxpayer died on December 31, 2001. Also, prior to the change in the Federal tax laws in 2001, the maximum amount of property that was effectively exempted, by reference to the credit, from Massachusetts estate tax (Massachusetts exemption) was equal to the applicable exclusion amount. After the change, this is no longer the case. For decedents

---

[5]The applicable exclusion amount is the maximum amount of property effectively exempted from Federal estate tax by use of the unified credit allowed to estates under I.R.C. § 2010 (2000) in determining estate tax liability.

[6]The parties do not cite the statutes whereby these changes were effected.

who died in 2005, the maximum Massachusetts estate tax exemption is $950,000, substantially less than the applicable exclusion amount, $1,500,000. Because the trustees were required to set aside in Trust Fund No. 1 only that portion of the property passing to the trustees having a value equal to the amount that, without increasing State death taxes payable on the death of the settlor, could pass free of Federal estate tax, the amount the trustees are required to set aside is $950,000, instead of the intended $1,500,000.

Had Helene been a United States citizen, she (as executrix) could have made a QTIP election with respect to only that portion of the property held in Trust Fund No. 2 as would be necessary to reduce the taxable estate of the settlor to the applicable exclusion amount. However, because a QDOT election may be made only with respect to the entirety of a trust, and not merely a portion of it, the executrix cannot remedy the situation by qualifying only that portion of Trust Fund No. 2 for the marital deduction as would reduce the taxable estate of the settlor to the applicable exclusion amount. Further, by making a QDOT election with respect to the entirety of the property required to be set aside in Trust Fund No. 2, the executrix will reduce the taxable estate of the settlor below the applicable exclusion amount, and no Federal estate tax will presently be due. However, because the principal of Trust Fund No. 2 remaining on the later death of Helene will have to be included in her estate for estate tax purposes, a significantly larger amount of property ($550,000) — the excess of the amount of property the settlor intended to be set aside in Trust Fund No. 1 ($1,500,000) over the amount that will actually be set aside ($950,000) — will be subject to Federal estate tax on Helene's death than would have been the case if the aforementioned revisions to the tax laws had not occurred.

The trustees therefore request authority to subdivide Trust Fund No. 2 into two identical subtrusts (Nos. 2A and 2B), so that Helene will be authorized to make a QDOT election as to Trust Fund No. 2B alone for Federal tax purposes. They also request that Helene have authority to make a QDOT election as to both Trust Funds Nos. 2A and 2B for Massachusetts tax purposes.[7] They agree and represent that this reformation will effectuate the settlor's intent to minimize taxes.

*Discussion.* We may reform a trust to conform to the settlor's intent when the instrument as drafted fails to accomplish the settlor's intended tax objectives. *Walker* v. *Walker*, 433 Mass. 581, 587 (2001), and cases cited. We require clear and decisive proof that the instrument fails to embody the settlor's intent. *DiCarlo* v. *Mazzarella*, 430 Mass. 248, 250 (1999). We have occasion-

---

[7] The parties seek explicit authorization for the executrix to make different QDOT elections for purposes of Federal and State law. The parties have not, however, cited any authority indicating that this is legally permissible and have not explained why it is necessary in order to further the settlor's intent. Cf. *Walker* v. *Walker*, 433 Mass. 581, 589 (2001) (declining to reform trust to extent parties had not argued additional revisions were necessary to effectuate settlor's intent). Further, the Department of Revenue has not been made a party to this case and thus has not had an opportunity to state its position on the effects of the proposed reformation under State tax law. In any event, we presume that the division of Trust Fund No. 2 would enable the executrix to make such election or elections as would be lawful and would further the settlor's intent without the necessity of our deciding whether she should be authorized to make one QDOT election for Federal purposes and a different one for State purposes.

ally also reformed trusts in light of a change in the law that frustrates a settlor's intent to minimize his or her tax liability. See *Grassian* v. *Grassian*, 445 Mass. 1012, 1014 (2005); *Freedman* v. *Freedman*, 445 Mass. 1009, 1010 & n.6 (2005); *BankBoston* v. *Marlow*, 428 Mass. 283, 285 (1998). That the settlor intended to minimize or defer estate taxes to the greatest extent possible is clear, and the parties do not dispute that changes in the tax laws frustrate that intent. Although these changes occurred during the settlor's lifetime, the trust was apparently not amended to take them into account. Further, in analogous prior cases — in which it was proposed that a trust be divided into two identical subtrusts in order to minimize the consequences of the generation skipping transfer tax — we have said that such a change "would be a relatively innocuous [one] — a type we have allowed on many occasions in the past. It would 'neither change[] the identity of any beneficiary nor alter[] any beneficial interest.' *BankBoston* v. *Marlow*, 428 Mass. 283, 286 (1998). It would be a mere 'fine tuning of the administration of the trust[] . . . in order to reduce, if not eliminate, the application of the' tax. *First Agric. Bank* v. *Coxe*, 406 Mass. 879, 883 n.6 (1990)." *Inderieden* v. *Downs*, 445 Mass. 1011, 1011 (2005), and cases cited. The proposed reformation in this case is similar. It would subdivide Trust Fund No. 2 without alteration of or harm to any beneficiary's interest, and would thereby permit the executrix to make a lawful QDOT election or elections that the parties believe and represent would effectuate the settlor's intent.[8]

*Conclusion.* A judgment shall enter in the Probate and Family Court reforming the trust as follows: Trust Fund No. 2 may be divided into two separate trusts, one to be called Trust Fund No. 2A, and one to be called Trust Fund No. 2B, each of which shall be administered on terms identical to those set forth in Article Second of the trust instrument, as amended, for the disposition of property now set aside in Trust Fund No. 2. This division shall be treated as having been effective as of June 12, 2005. See *Seegel* v. *Miller*, 443 Mass. 1007, 1010 (2005), citing *Fleet Nat'l Bank* v. *Wajda*, 434 Mass. 1009, 1011 (2001) (affirming reformation retroactively).

*So ordered.*

The case was submitted on briefs.

*Christopher P. Carr, Thomas B. Pell, Juliet A. Davison, & Seth J. Robbins* for the plaintiffs.

---

[8]Nothing in this opinion should be regarded as deciding any issue of Federal or State tax law. As noted above, the parties have not cited the statutes changing the laws in a manner that allegedly frustrates the settlor's intent or any authority showing that it is permissible to make different QDOT elections for State and Federal purposes. See notes 6 and 7, *supra.* Because in the circumstances of this case, the settlor's tax objectives and intent are clear, there is no harm to any beneficiary's interest, and the proposed reformation is ministerial, we agree that this trust should be reformed notwithstanding the omission. However, future litigants and their attorneys are reminded of their obligation to provide a full record to support their requests for reformation, including authority for their legal representations, and they are cautioned that we will not hesitate to reject proposed reformations in future cases where the record is incomplete.