McCann, John S., J.
Arthur Ansbigian (“Arthur”) and Beatrice Ansbigian (“Beatrice”) were married in 1948 and remained husband and wife until Arthur’s death in 2003. Beatrice died in 2005. In 2001, Arthur and Beatrice executed separate wills and pour-over, inter vivos trusts (respectively, the “Arthur Trust” and the “Beatrice Trust”). Both trust instruments dictate that the bulk of each spouse’s respective estate would be held in trust for the benefit of the surviving spouse, for life, and then given to a group of named remainder beneficiaries. The terms of the Arthur Trust and the Beatrice Trust were practically identical, the only significant difference being the choice of remainder beneficiaries and successor trustees. The plaintiff, George Harootian (“Harootian”), is the trustee of the Arthur Trust and a remainder beneficiary. The defendant, Michael Douvadjian, (“Douvadjian”) is the trustee of the Beatrice Trust and a remainder beneficiary.
Relevant to this action are the terms of the Arthur Trust. Arthur appointed himself and Beatrice to serve as the initial co-trustees and, according to Clause 23, Harootian would serve as successor trustee should Arthur “cease[ ] to serve as Trustee for any reason . ..” In the event that Beatrice survived Arthur — which is what ultimately transpired — the trustees of the Arthur Trust were ordered to pay the trust income to Beatrice during her life and, upon her written request on August 1 of each year, five percent of the trust principal.[3] The trustees were also authorized to invade the trust principal and pay it to or on behalf of Beatrice for her support and reasonable comfort and maintenance.
When Arthur died in 2003, Beatrice served as the sole trustee of the Arthur Trust until she died in January 2005. Notwithstanding Clause 23, Harootian did not become a trustee until February 2005. He claims that he was not appointed trustee until two years after Arthur’s death because he was never told of his successor trustee status. Douvadjian contends, however, that Harootian knew or should have known the import of Clause 23 soon after Arthur’s Death.
Harootian alleges that during Beatrice’s tenure as sole trustee of the Arthur Trust, she and Douvadjian[4] made various disbursements of trust principal which diminished the value of Harootian’s remainder interest by more than $300,000. Harootian maintains that these distributions are void because Beatrice made them without first obtaining the authorization of Harootian, her co-trustee, as required by Clause 23. Consequently, Harootian brings this action against Douvadjian in his individual capacity and as executor of Beatrice’s estate. He also seeks to recover from Douvadjian in his capaciiy as trustee of the Beatrice Trust, as a reach and apply defendant. Harootian now moves for summary judgment.
Douvadjian maintains that Harootian’s motion should be denied for a number of reasons. First, Douvadjian argues that Clause 23 is ambiguous and he submits parole evidence to suggest that Arthur never intended to make Harootian and Beatrice co-trustees upon his death. Rather, Douvadjian asserts that Arthur intended for Beatrice to serve as sole trustee until her death and Harootian would succeed her. Douvadjian argues, therefore, that the trust instrument should be reformed to reflect this intent which, in turn, would negate Harootian’s claim to a “veto power” over disbursements of principal made between Arthur’s death and Beatrice’s death. Douvadjian cross-moves for partial summary judgment on this issue.
Second, Douvadjian argues that summary judgment should not enter because he has a valid defense predicated on Harootian’s “tactical decision” to wait until after Beatrice’s death to claim co-trustee status. Finally, Douvadjian asserts that a trial is required, even assuming Harootian should have served as co-trustee, because the submissions are not clear as to what distributions Harootian would have objected to had he been a co-trustee of the Arthur Trust before Beatrice died. After a hearing, both parties’ motions for summary judgment are DENIED.

DISCUSSION

The court will grant summary judgment where there are no genuine issues of material fact and the *408 summary judgment record entities the moving party to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Comm’r of Corr., 390 Mass. 419, 422 (1983). In reviewing a motion for summary judgment, the court views the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party. G.S. Enters., Inc v. Falmouth Marine, Inc., 410 Mass. 262, 263 (1991).
The moving party bears the initial burden of demonstrating the absence of a triable issue and that the summary judgment record entitles the moving party to judgment as a matter of law. Ng Bro. Const., Inc. v. Cranney, 436 Mass. 638, 643-44 (2002); Kourouvacilis v. Gen. Motors Corp., 410 Mass. 706, 716 (1991). When the moving party does not bear the burden of proof at trial, the moving party must either: (1) submit affirmative evidence negating an essential element of the non-moving party’s claim; or (2) demonstrate that the non-moving party’s evidence is insufficient to establish an essential element of its claim. Kourouvacilis, 410 Mass. at 715-16. Once the moving party has met this initial burden, the non-moving party then bears the burden of “set[ting] forth specific facts showing that there is a genuine issue for trial.” Id. at 716 (quoting Mass.R.Civ.P. 56(e)). The non-moving party “cannot rest on his or her pleading and mere assertions of disputed facts.” Lalonde v. Eissner, 405 Mass. 207, 209 (1989).
Harootian’s complaint states various causes of action, all of which arise from the allegation that Beatrice, with Douvadjian’s aid, disbursed trust principal without first obtaining Harootian’s authorization. Harootian contends that such authorization was required because Arthur intended for Beatrice and Harootian to serve as co-trustees after his death. Douvadjian claims, on the other hand, that Arthur actually intended for Beatrice to serve as sole trustee after Arthur’s death and, thereafter, Harootian would become a trustee. Were this the case, the plain language of the trust instrument would have empowered Beatrice to distribute principal to herself for her support and reasonable comfort and maintenance and none of the disbursements at issue would give rise to liability.
The interpretation of a trust instrument initially presents a question of law that turns on the settlor’s intent as reflected in the trust instrument. Steele v. Kelley, 46 Mass.App.Ct. 712, 731 (1999). Where a trust instrument contains ambiguities, extrinsic evidence is admissible to remedy conflicting terms and to show circumstances existing at the time the settlor considered the relevant language. Putnam v. Putnam, 366 Mass. 261, 266-67 (1974). Whether a trust instrument is ambiguous on its face is a question of law. Schroeder v. Danielson, 37 Mass.App.Ct. 450, 453 (1994). Unless the terms of the trust dictate otherwise, a trustee cannot act on behalf of the trust without the consent of her co-trustees. DeLongchamps v. Duquette, 24 Mass.App.Ct. 976 (1987). It would follow that if Arthur intended for a co-trustee arrangement after his death, some of the disbursements at issue were unauthorized and could give rise to liability.
This Court finds, however, that the trust instrument is ambiguous as to whether Arthur intended for a co-trustee arrangement after his death or if he simply intended for Beatrice to serve as sole trustee. Clause 23 could fairly be read to require Harootian to succeed Arthur as soon as Arthur ceased to serve as trustee, whether or not Beatrice was also a trustee at the time. There can be no dispute that Arthur ceased to serve as trustee in 2003. That said, Clause 23 appoints Harootian as a successor “trustee,” not a successor “co-trustee,” and, as such, Clause 23 could be construed to apply only in the situation where Arthur survived Beatrice and was the sole trustee when he died or otherwise ceased to serve. If this latter reading were to govern, the trust document would fail to specify who would succeed Beatrice upon her death if she survived Arthur. In any event, this Court finds that Clause 23, read in the context of the entire document, presents an ambiguity.[5]
Both parties have offered extrinsic evidence to support their respective positions. Harootian bases his argument on the literal language of Clause 23 as well as the tax-minimizing objective that the trust clearly reflects. According to an expert affidavit submitted by Harootian, these tax implications would be furthered by an arrangement whereby Beatrice and Harootian served as co-trustees between Arthur’s death and Beatrice’s death.[6] Douvadjian points to the deposition testimony and affidavit of Andrew Aloisi (“Aloisi”), the attorney who drafted the trust document. Aloisi indicated that Arthur intended for Beatrice to serve as sole trustee of the Arthur Trust after his death and Clause 23’s failure to adequately spell this out constitutes scrivener’s error. Aloisi also indicated that the Arthur Trust’s primary objective was to take care of Beatrice and tax implications, which could ultimately preserve principal and benefit the remaindermen, were of secondary importance. Douvadjian relies, moreover, on various correspondences between the Ansbigians and Aloisi and submits evidence of animosity between Harootian and Beatrice that, he argues, suggests that Arthur would not have intended for them to serve as co-trustees.
Given the ambiguity in the trust document and the fact that both Harootian and Douvadjian have submitted conflicting evidence as to Arthur’s intent, both parties’ motions for summary judgment must be denied.[7] This Court agrees with Douvadjian, moreover, that evidence in the record suggests that Harootian knew or should have known as early as 2003 that the trust instrument arguably appointed him to serve as co-trustee with Beatrice. Harootian’s failure to assert his rights until 2005, which Douvadjian dubs a “tac *409 tical decision,” could predicate a valid defense at trial. The submissions also are not clear as to which expenditures Harootian would have objected to had he been appointed trustee immediately after Arthur’s death. For these reasons as well, this action must reach the finder of fact.

ORDER

For the foregoing reasons, it is hereby ORDERED that both parties’ motions for summary judgment are DENIED.

For tax purposes, presumably, the trustees of the Arthur Trust were given the option to fund two separate trusts at Arthur’s death. Such an arrangement was not necessary, however, given the size of Arthur’s estate and only one trust was funded.

Douvadjian allegedly had access to the funds in the Arthur Trust because he served as the manager of the liquid assets of Arthur’s estate.

A1so complicating matters is the trust document’s continuous referral to the “trustees” in the plural when it describes directives that were contingent upon Beatrice surviving Arthur.

This affidavit was drafted by attorney Stuart Hammer and Douvadjian argues that it should be stricken from the record because: (1) Harootian has not designated Hammer as an expert; (2) Hammer is not eligible to testify because he represented the plaintiff on a prior occasion; and (3) the affidavit does not evidence factual issues but, rather, presents only a legal opinion. The decision to exclude the testimony of an expert witness rests in the broad discretion of the trial judge. Palandjian v. Foster, 446 Mass. 100, 104 (2006). This Court is not inclined to strike Hammer’s affidavit at the summary judgment stage and does not agree that it fails to offer insight into factual issues presented by this case. Tax implications were clearly a factor in Arthur’s choice of trust terms and the affidavit does evidence Arthur’s intent in that it states that a co-trustee arrangement would have furthered this objective. That said, Douvadjian may pursue this argument in later proceedings by submitting a motion in limine.

This Court also notes that Douvadjian has submitted enough evidence to create a genuine issue of material fact on his reformation theory. In Massachusetts, a trust instrument may be reformed upon clear and decisive proof that it does not embody the settlor’s intent because of a scrivener’s error. Walker v. Walker, 433 Mass. 581, 587 (2001). The terms of a trust may be reformed even if they are unambiguous. Putnam v. Putnam, 425 Mass. 770, 772 (1997). To determine if reformation is in order, the court may examine the trust instrument, the circumstances surrounding its execution, and other extrinsic evidence such as an affidavit submitted by the drafting attorney. Walker, 433 Mass. at 587. Since Douvadjian offers evidence that the trust instrument does not adequately articulate Arthur’s intent, he may succeed on this reformation argument. For this reason as well, Harootian’s motion for summary judgment must be denied.