Trustees of two qualified personal residence trusts (QPRTs) commenced these actions in the Probate and Family Court, seeking reformation of the trusts to correct drafting errors that they claimed frustrated the settlors’ intent to reduce their estate and gift tax liabilities. A probate judge reported the cases to the Appeals Court, and we granted the trustees’ applications for direct appellate review.[5]
Under the trust instruments, the settlors, husband and wife, were entitled to live in the trust property for ten years (income term), after which the property was to be held in trust for their two sons. Article VII of each trust provides that, after the income term, the other spouse may live in the property rent free for his or her life, receive net income from the trust, and withdraw principal as needed for his or her support and medical expenses. Article VIH(E) of each trust provides that if after the income term it is no longer economical to administer the trust, the trust could be distributed to the other spouse.
After the income term, the settlors continued living in the property and began paying fair market rent to their sons. It later came to the settlors’ attention, however, that their goal of reducing their tax liabilities by paying rent to their sons was frustrated by each trust’s inclusion of the other settlor as a beneficiary, as provided in Articles VII and VIII(E) of each trust. See N.B. Choate, The QPRT Manual: The Estate Planner’s Guide to Qualified Personal Residence Trusts § 3.6.03, at 157 (2004) (granting life estate in trust to spouse “diminishes the estate tax benefits of the QPRT. . . . If the goal is to reduce the spouses’ taxable estates as much as possible, it would be better for them to begin paying rent to the children for the use of the property . . .”). Thus, the trustees sought reformation of those articles to eliminate the settlors as beneficiaries.
It is well settled that a trust instrument may be reformed to conform to the settlor’s intent. Walker v. Walker, 433 Mass. 581, 587 (2001), and cases cited. “To ascertain the settlor’s intent, we look to the trust instrument as a whole and the circumstances known to the settlor on execution.” DiCarlo v. Mazzarella, 430 Mass. 248, 250 (1999), quoting Pond v. Pond, 424 Mass. 894, 897 (1997). “In addition, we have indicated our willingness to accept extrinsic *853 evidence, such as an attorney’s affidavit, that demonstrates that there has been a mistake.” Walker v. Walker, supra.
The case was submitted on briefs.
Renat V. Lumpau & Andree M. Saulnier for Carl B. Bindman & another.
The existence of a mistake in the drafting of a trust instrument must be established by “full, clear, and decisive proof.” Putnam v. Putnam, 425 Mass. 770, 772 (1997), quoting Berman v. Sandler, 379 Mass. 506, 509 (1980). That proof is made out here where the trustees have provided an affidavit from the attorney who drafted the trusts, acknowledging his mistake; the settlors’ affidavits demonstrating their intent in executing the trusts (and the settlors’ choices to create qualified personal residence trusts themselves show an intent to minimize tax liability, see Van Riper v. Van Riper, 445 Mass. 1007, 1008 [2005], and authorities cited); an assent to the proposed reformations, with proposed modifications by a guardian ad litem who was appointed to represent the interests of unborn and unascertained beneficiaries; the defendant beneficiaries’ agreements to the facts presented in the complaints; and the defendant beneficiaries’ assents to the relief sought, as modified by the guardian ad litem. Those materials demonstrate that reforming the trusts as requested (including the guardian ad litem’s modifications) will effectuate the settlors’ intent.
We remand the cases to the Probate and Family Court for entry of judgments reforming the trusts as proposed by the trustees, incorporating the modifications of the guardian ad litem.

So ordered.

The judge also purported to reform the trusts by signing a proposed judgment drafted by the trustees. But see Riley v. Riley, 434 Mass. 1021, 1022 n.5 (2001).