NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11698

MARY-KATHLEEN O'CONNELL & another,[1] trustees,[2]  vs.
GEORGE C. HOUSER, JR., & others.[3]


October 28, 2014.


Trust, Reformation.  Taxation, Generation skipping transfer tax.


     The trustees filed a complaint in the county court seeking
reformation of the trust established under Article Fourth of the
Mary R. Houser Trust -- 1991 to correct a drafting error that
they contend frustrates the intent of the settlor and her
husband to provide for their descendants in an efficient and
tax-advantageous manner.  Apart from the Commissioner of
Internal Revenue, who has not appeared, the parties with
competency to do so have stipulated for themselves and their
minor, unborn, and unascertained issue to the facts underlying
the complaint and assented to the relief requested.  A single
justice of this court reserved and reported the case to the full
court.[4]

_____

     [1] Dennis J. Phillips.

     [2] Of the trust established under Article Fourth of the Mary
R. Houser Trust -- 1991.

     [3] Charlene D. Houser, Addison Houser, Austin Houser, George
C. Houser, III, Victoria Houser, Julia Houser, and the
Commissioner of Internal Revenue.  The complaint also names
"others," referring to "unborn and unascertained issue of Mary
R. Houser."

     [4] The parties have moved to dispense with appointment of a
guardian ad litem for any minor, unborn, and unascertained
descendants of Mary R. Houser.  "[I]t is preferable that this

Background.  As part of their estate plans, George C. Houser (George Sr.) and Mary R. Houser (Mary) established trusts to provide income for their sons, George C. Houser, Jr. (George Jr.), and Horace M. Houser (Horace), while preserving principal for future generations.  The George C. Houser Trust -- 1980 (George Houser Trust) became irrevocable on George Sr.'s death in 1983.  It established two trusts for Mary's benefit during her lifetime, and gave her a power of appointment over one of the trusts (the marital trust).  On Mary's death in 1993, the principal remaining in the George Houser Trust was divided into two "share trusts," one for each of the Housers' sons.  Each son was given a power to "appoint by his will" any property remaining in his respective share trust on his death "to such one or more of the Donor's issue" or to trusts for their benefit.  The parties represent that the property contained in the share trusts is not subject to the Federal generation skipping transfer (GST) tax.[5]  The George Houser Trust provided that each share trust:

> "shall terminate whenever after the death of said child of the Donor [George Sr.] no issue of said child is living, or upon the expiration of twenty-one (21) years after the death of the last survivor of the Donor, the Donor's wife MARY and all of the <u>Donor's issue by blood living at the Donor's death</u>, whichever shall first occur." (Emphasis added).

After George Sr.'s death and enactment of the GST tax, Mary established the Mary R. Houser Trust -- 1991 (Mary Houser Trust).  She exercised her power of appointment over the marital trust property by appointing it to the trustees of the Mary Houser Trust.  She directed that, on her death, an amount equal to her GST exemption be held in a family trust established under

---

court be furnished with and have the benefit of an independent guardian's opinion concerning the possible consequences of the reformation for those beneficiaries." <u>Fiduciary Trust Co</u>. v. <u>Gow</u>, 440 Mass. 1037, 1038 n.7 (2004).  In the circumstances of this case, we allow the motion.

[5] The parties state that the assets contained in the George Houser Trust (and the share trusts created under it) and the distributions from it are exempt from the Federal generation skipping transfer (GST) tax because the trust became irrevocable prior to September 25, 1985, and it is therefore "grandfathered."  See generally <u>Morse</u> v. <u>Kraft</u>, 466 Mass. 92, 94 n.7 (2013).

Article Fourth of her trust.  The parties state that distributions from the family trust to Mary's grandchildren and more remote descendants are fully exempt from the GST tax. According to its terms, the family trust will terminate:

> "(i) whenever after the death of the Donor [Mary] no issue of the Donor is living or (ii) upon expiration of twenty-one (21) years after the death of <u>all of the Donor's issue</u> living on the date of the Donor's death, whichever event shall first occur."  (Emphasis added).

When George Sr. died in 1983, and Mary died in 1993, their "issue by blood" were the same:  George Jr. and Horace, and George Jr.'s children, Charlene Houser and George C. Houser, III.

    <u>Discussion</u>.  Horace died on December 9, 2009, without having had any children.  He exercised his power of appointment over his GST-exempt share trust by directing that the property be added to the GST-exempt family trust.  The trustees contend that the GST-exempt status of the property held in Horace's grandfathered share trust is lost if a power of appointment over the property is exercised:

> "in a manner that may postpone or suspend the vesting, absolute ownership or power of alienation of an interest in property for a period, measured from the date of the creation of the trust, extending beyond any life in being at the date of creation of the trust plus a period of 21 years."

26 C.F.R. § 26.2601-1(b)(1)(v)(i)(B)(2).  Because the duration of the family trust as drafted is not measured solely by the lives of Mary's "blood issue" -- it potentially includes the lives of adopted persons -- the parties state that termination of the family trust may extend beyond the termination of the George Houser Trust.  They contend, therefore, that unless the family trust is reformed by adding the words "by blood" to its termination provision (as with the George Houser Trust), the GST-exempt property appointed to the family trust by Horace not only will lose its tax exempt status, but it will also make administration of the trust cumbersome.

    Where, as the result of a drafting mistake, a trust instrument fails to accomplish the settlor's intent, or leads to results inconsistent with that intent, reformation is appropriate.  See <u>Rockland Trust Co</u>. v. <u>Attorney Gen</u>., 463 Mass.

1004, 1005 (2012), citing Walker v. Walker, 433 Mass. 581, 587 (2001); Bindman v. Parker, 459 Mass. 1004, 1004 (2011).[6]  We require clear and decisive proof that the instrument as drafted "fails to embody the settlor's intent," and produces "tax results . . . clearly inconsistent with the settlor's tax objectives."  Walker v. Walker, supra (citations omitted). Here, the trustees have adduced the requisite proof.  From the trust instrument itself, Mary's and George Sr.'s over-all estate plans, the affidavit of Mary's attorney, and the proof of other circumstances known to Mary at the time she created her trust, it is clear that she intended the family trust to complement her husband's estate plan and to operate as a vehicle to preserve Houser family property for the benefit of the Housers' descendants with the least GST tax burden possible.  Among other things, after the enactment of the GST tax, Mary exercised her power to appoint her taxable marital trust property to a separate trust, executed the family trust, and then funded it with her maximum GST exemption amount, with the understanding that a single trust (containing GST-exempt property) would be the most efficient and tax-advantageous way to provide for future generations.

In these circumstances, we are satisfied that omission of the words "by blood" was not intentional and that it was, instead, the result of a mistake in drafting.  The affidavit of Mary's attorney and the agreed facts further support this conclusion.  Omitting the words "by blood" in the family trust's termination provision had the unintentional effect of decoupling the settlor's plan from that of her husband, and inadvertently frustrates her estate planning objectives.  Without reformation to include the omitted language, Horace's exercise of his power of appointment to add property from his father's trust to the family trust will defeat her purpose.

Finally, we announce a change in procedure for future cases such as this.  On October 1, 2014, the court voted to adopt the "Amended Report of the Supreme Judicial Court's Ad Hoc Committee on Bosch Litigation" and to accept the committee's recommendations contained in the report.  Consequently, in the future, cases like this -- which involve no novel or unsettled issue of Massachusetts law, require only the application of

---

[6] Cases like this raise issues of State law, which the parties ask us to resolve because of their Federal tax implications.  See Walker v. Walker, 433 Mass. 581, 582 (2001); Kirchick v. Guerry, 429 Mass. 215, 217 (1999) (in reformation cases, court decides State law issues, not Federal law issues).

settled Massachusetts legal principles to a particular set of facts, and have no particular significance beyond the specific parties and the specific facts involved -- should ordinarily be heard and decided in the Probate and Family Court.  The report is available online on the court's web site and in the offices of the clerks of the county court and the full court.

Conclusion.  A judgment shall enter reforming the family trust (subsection 2 [ii] of Article Fourth of the Mary R. Houser Trust -- 1991), by inserting the term "by blood" after the phrase "all of the Donor's issue."

So ordered.

The case was submitted on briefs.
Mary-Kathleen O'Connell, Jennifer Locke, & Janet Rickershauser for the plaintiffs.